1

2 **UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON DIVISION**
3

4

5   ERNEST LEE DEAN                Civil Case No. _2:19-cv-02050-JR_

6        **Plaintiff(s)**

7

8   **v.**

9   SNAKE RIVER CORRECTIONAL INSTITUION et, al
    OREGON DEPARTMENT OF CORRECTIONS et,al
10  DRAVIS, RUTHVEN, SMITH, GULICK, HEMPHILL,
    KOLTES, CLEMENTS, DIGIULIO, CAIN, PETERS
11

12       **Defendant(s)**

13

14

15       **PRISONER CIVIL RIGHTS COMPLAINT**

16            **42 U.S.C. 1983**

17          **Jury Trial Demanded**

18

19

20       **Verified Complaint for Damages, Declaration,**

21            **And Injunction Relief**

22

23

24

1

2                              **Introduction**

3                                   **I**

4

5   1.  This is a 1983 action filed by Plaintiff, Ernest Lee Dean, a state prisoner, for damages

6       and injunctive relief under 42 U.S.C.  1983, alleging: Municipal Liability, and

7       Supervisory Liability for Deliberate Indifference, for lack of Ameliorative Mental

8       Health Care, and that Plaintiffs Condition of Confinement, violated the Eighth and

9       Fourteenth Amendment to the United States Constitution and that defendants were

10      deliberate indifferent to the conditions.

11

12                              **Jurisdiction**

13                                  **II**

14

15  2.  Jurisdiction of this court is invoked pursuant to 25 U.S.C § 1343  in that this is a civil

16      action arising under the constitution of the United States.

17  3.  Jurisdiction of the court is invoked pursuant to 28 U.S.C. § 1343 (a) (3) in that this

18       Action seeks to redress the deprivation, under color of state law, of rights secured by acts

19      of congress providing for equal rights of persons within the jurisdiction of the United

20      States.

21

22  4.  Jurisdiction of this court is invoked pursuant to 28.U.S.C. § 1332, where jurisdiction

23      arises under the Constitution  of the United States, an Amendment to the constitution and

        and  of Congress or treaty of the United States.

24

1

**Parties**

2

**III**

3

4   5.   **Plaintiff**: Ernest Lee Dean, at all times relevant was confined by the Oregon

5        Department Of Corrections (ODOC) and serving a prison sentence at the at Snake

6        River Correctional Institute, residing in Ontario Oregon, in the County of Malheur.

7

8   6.   **Defendant:** Oregon Department of Corrections, herein shall be referred to as Defendant,

9        or ODOC, or Prison Officials, is a state government agency, and municipality under the

10       laws of the State of Oregon, and sued in its official capacity for violations done pursuant

11       to a policy, custom, or practice. ODOC conducts business in the state of Oregon in Salem

12       Oregon, in the County of Marion.

13

14  7.   **Defendant**: Colette Peters, is the Director of the Oregon Department of Corrections, and

15       acting with Actual Authority for defendant, ODOC. Colette Peters, is employed at the

16       Oregon Department of Corrections, in Salem Oregon, in the County of Marion. She is

17       sued in her official capacity for Injunction Purposes only.

18  8.   **Defendant:** Snake River Correctional Institution, herein shall be referred to as SRCI, is a

19       local Correctional Institution, and municipality, under the laws of the state of Oregon,

20       and sued in its official capacity for violation done pursuant to a policy, custom, or

21       practice. SRCI conducts business in the State of Oregon, in Ontario Oregon, in the

22       County of Malheur.

23

24

1
2
3
4
5

**9. Defendant**: Brad Cain, is the Superintendent of the Snake River Correctional Institution, and acting with actual Authority for defendant, SRCI. Brad Cain is employed at Snake River Correctional Institution, in Ontario Oregon. he is sued in his official capacity for Injunction Purposes only.

6
7
8
9
10
11
12

**10. Defendant**: Dr. Donald Dravis, herein shall be referred to as defendant, Prison officials, is the Chief Psychiatrist and Behavioral Health Service Administrator at ODOC, He is the person responsible for the overall organization and delivery of mental health service to inmates in the State of Oregon. He is employed with the Oregon Department of Correction, and conducting business, in Salem Oregon, in the County of Marion. He is sued in his individual capacity, for supervisory Liability, for Deliberate Indifference. And Official Capacity for Injunction only.

13
14
15
16
17
18
19
20
21
22
23
24

**11. Defendant**: Dr. Daryl Ruthven, herein shall be referred to as Defendant, Prison Official, is the Chief Psychiatrist, , and clinical Director at ODOC. He is the person responsible monitoring clinical operations statewide, who reports to the behavioral Health Service Administrator. He is employed with the Oregon Department of Corrections, and conducting business, in Salem Oregon, in the county of Marion. He is sued in his individual capacity, for Supervisory Liability for Deliberate Indifference. And Official Capacity for Injunction purpose only

*Prisoner Civil Right Complaint*          Form 17.030
                                              *42 U.S.C 1983*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**12. Defendant**: Renae Smith, herein shall be referred to as Defendant, Prison Officials, is the Clinical Supervisor and Behavioral Health Service Program Manager at SRCI. She is responsible for Supervising Mental Health Treatment Provided by Mental Health Specialist to Inmates at SRCI. She is Employed with Snake River Correctional Institution, and conducting business in Ontario Oregon in the County of Malheur. She is sued in her individual capacity, for Supervisory Liability For Deliberate Indifference. And Official Capacity for Injunction purposes only

**13. Defendant**: Garth Gulick, is the Treating Physician for the Plaintiff, and responsible with providing medical care to inmates at SRCI. He is a SRCI, TLC-Provider, with the duty of making medical treatment decisions and referrals reviewed by the Therapeutic Level of Care Committee, (TLC-Committee) and is directly involved with approving or denying Plaintiff request for access to outside medical care. He is employed at Snake River Correctional Institution, (SRCI), and conducting business in Ontario, Oregon, in the County of Malheur. He is sued in his individual capacity. And Official Capacity for Injunction purposes only

**14. Defendant**: Dr. Brian Hemphill, is a Prison Medical Physician responsible with providing medical care to Inmates at SRCI. He is a SRCI, TLC-Provider, task with the duty of making medical treatment decisions and referral reviews by the Therapeutic Level of Care Committee, (TLC-Committee), and is directly involved with approving or denying Plaintiff request to access to outside Medical Care. He is employed at Snake River Correctional Institution, (SRCI), and conducting business in Ontario, Oregon in the County of Malheur. He is sued in his individual capacity. And Official Capacity for Injunction purposes only

*Prisoner Civil Right Complaint*            Form 17.030
                                    *42 U.S.C 1983*

**15. Defendant**: Dr. Lisa Koltes, is a Prison Medical Physician, responsible with providing Medical Care to Inmates at SRCI. She is a SRCI, TLC-Provider, task with the duty of making medical treatment decision and referral reviews by the Therapeutic Level of Care Committee, (TLC-Committee), and is directly involved with approving or denying the Plaintiff request to Outside Medical Care. She is employed at Snake River Correctional Institution, (SRCI), and conducting business in Ontario Oregon in the County of Malheur. She is Sued in her individual capacity. And Official Capacity for Injunction purposes only.

**16. Defendant**: Ashley Clements, is a Prison Nurse Practitioner, responsible, with performing Health Care Duties consistent with Health Evaluation and Screening of Inmates signed up to see a Sick call Nurse, at SRCI. She is a SRCI, TLC-Provider, task with the duty of making medical treatment decisions and referral reviews by the Therapeutic Level of Care Committee (TLC-Committee), and is directly involved with approving or denying the Plaintiff request to Outside care. She is employed at Snake River Correctional Institution, (SRCI) and conducting business in Ontario Oregon, in the County of Malheur. She is sued in her individual capacity. And Official Capacity for Injunction purposes only.

*Prisoner Civil Right Complaint*                     Form 17.030
                                              *42 U.S.C 1983*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**17. Defendant**: Dr. Christopher Digiulio, is the Health Service Clinical Medical Provider, for the Oregon Department of Corrections, (ODOC), he is task with the duty of authorizing all decisions requiring medical judgment directly affecting a Prisoner Care, at SRCI. He is the SRCI, TLC-Provider, task with the duty of making the final medical treatment decisions and referral reviews Via-Phone, by the Therapeutic Level of Care Committee, (TLC-Committee)and is directly involved with the final approval or denial of the Plaintiffs request to outside care. He is employed at the Oregon Department of Corrections, (ODOC), and conducting business in Ontario Oregon, in the County of Marion. He is Sued in his individual capacity. And Official Capacity for Injunction purposes only.

## BACKGROUND

**18.** Plaintiff originally pursued a State Habeas Case alleging conditions of confinement, which was filed in the Oregon Supreme Court in case:  Ernest Lee Dean v. Oregon Department of Corrections ex,rel Donald Dravis M.D., case# S066212. The case was sent to Malheur County Circuit Court and dismissed without prejudice by the Oregon Supreme Court on November 27th, 2018. **Attached:** is Copy of Appellate Judgment.

**19.** Plaintiff refiled the State Habeas corpus for condition of confinement, in Malheur County Circuit Court, in case: Ernest Lee Dean v. Brad Cain, Snake River Correctional Institution. On July 29th, 2019 Malheur County Court entered a Order of Dismissal Without Prejudice **Attached**: is Copy of Order of Dismissal.

1

2

3

4   **20.** Plaintiff latter sought to pursue Jurisdiction in The Oregon Supreme Court, on the

5   grounds of Justifiable Controversy. The case was subsequently dismissed by the Oregon

6   Supreme court without prejudice on October 24th, 2019. **Attached:** is a copy of Order

7   Granting Motion to Waive filing fee and denying Petion for Writ of Habeas.

8

9   **21.** At issue was whether plaintiff cognizant claim for Condition of Confinement was

10   properly pursued in the proper jurisdiction. Plaintiff argued that there were arbitrary

11   delays on the part of the Malheur County Circuit Court, and the handling of the case.

12

13   **22.** Plaintiff, now brings this 42 U.S.C. 1983 Actions for damages resulting from Municipal

14   Liability For Deliberate Indifference, Supervisory Liability For Deliberate Indifference,

     Eighth Amendment Deliberate  Indifference and Access To Care,  and alleges

15   Unconstitutional Conditions of confinement and Cruel and Unusual Punishment under

16   the Eighth Amendment  applicable to the State under the Fourteenth Amendment of the

17   United States Constitution.

18

19   **23.** Plaintiff has opted to forgo, another filing of a State Habeas Claim in Malheur County

20   Circuit Court, as he believes that the defendants in the original Stat Habeas Petition no

21   longer presents a Justiable Controversy, and the issues no longer qualifies for immediate

22   Judicial Scrutiny. Plaintiff has appropriate remedy available in  this court for a claim of

     Municipal Liability, and Supervisory liability for deliberate Indifference,

23   Eighth Amendment Deliberate Indifference, and Access to Care.

24

*Prisoner Civil Right Complaint*   Form 17.030
*42 U.S.C 1983*

1

2

3

4

**LEGAL BAISIS FOR 42 U.S.C. 1983 COMPLAINT**

5      **24.** Plaintiff will show a Eighth and Fourteenth Amendment violation on the part of Policy,

6            and or costume by defendants SRCI, and ODOC, and that Prison Officials acted with

7            Deliberate Indifference or that their conduct was so reckless as to be tantamount to a

8            desire to inflict harm.

9

10     **25.** Plaintiff contends that Prison Officials acting in Supervisory capacity in their individual

            capacity were responsible for unconstitutional conditions of confinement and that there

11            culpable action, or inaction directly attributed to them.

12

13

14     **26.** Plaintiff has named these Prisoner Supervisor as individual defendants, and will show

            how there actions through a series of culpable action and inaction attributed to the

15            Constitutional violations, as they acted according to policy and custom at issue.

16

17     **27.** Plaintiff will show these prison supervisors were aware of the unconstitutional policy and

18            custom, and dangerous risk to the plight of plaintiff mental health psychosis.

19

20     **28.** Plaintiff does not alleged the Individual Defendants are directly liable for the lack of

21            Ameliorate Mental Health Care, denied to the plaintiff. Rather plaintiff alleges

            unconstitutional conditions of confinement in violation of the Eighth Amendment
22
            Prohibition against cruel and unusual punishment, as incorporated through the due
23
            Process Clause of the Fourteenth Amendment.
24

1

2

3

4   **29.** Plaintiff contends that the Individual Defendants acted or failed to act in manner that was

5      deliberately  indifference to the Plaintiff Eighth Amendment Right, and demonstrated

6      there involvement and the liability of that supervisor in this respect.

7

8   **30.** Plaintiff contends that these Individual Defendants may be liable on the basis of there

9      own acts or omissions, including supervising with deliberate indifference towards the

10      possibility that deficient performance of the task may have contributed to Plaintiff Civil

11      Rights deprivation separate from the Municipal Liability.

12

13   **31.** Plaintiff will plead a separate claim against these individual defendants for deliberate

14      indifference based upon Supervisors knowledge of and acquiescence in unconstitutional

15      conduct by his or her subordinates.

16   **32.** Plaintiff will show the requisite casual connection, by presenting a series of factual events

17      by others, or by knowingly refusing to terminate a series of acts by others which the

18      Prison Supervisor knew or reasonably should have known would cause others to inflict a

19      Constitutional Injury on the Plaintiff.

20

21

22

23

24

*Prisoner Civil Right Complaint*              Form 17.030
                                    *42 U.S.C 1983*

1

2

3

4

## STATEMENT OF FACT

5

### DEFENDANTS FAILURE TO PROVIDE
6
### AMELIORATIVE MENTAL HEALTH CARE

7

8    **33.    Supporting Fact I :** In Support of Plaintiffs position, he cites to the absence of any

9    description of ameliorative care in the  prison mental health Policy, to the extent  Mr.

10    Dean believes that the distinction is significant-since an affirmative course of treatment

11    must have been medically unreasonable-the care received and the nature of that care was

12    based on Systemically Misdiagnosis endorsed based on [1]out dated assessments

13    procedures , [2] selective symptom documentation, and   [3] 20-minute Video Conference

14    once every 4-6 weeks, reflecting exclusive reliance on observation and assessment

15    through a 20-Minuit video session once every 45-60 days. without an accurate  formal

16    diagnosis, physical examination, detailed and dynamic treatment plan, and ending up at

17    the same diagnosis perpetrated by Dr. Trudy Evans and other BHS Mental Health staff at

18    SRCI as,  Borderline Personality Disorder, in  order to justify limited or non-effective

19    treatment. (**see Plaintiff Exhibit #-4  & Exhibit #-5:** <u>Declaration of Dr. Trudy Evans/</u>

20    <u>Darci Jennings, QMHP)</u>

21

22

23

24

1

2

3

4

5  **34. Supporting Fact: II** In support of Plaintiffs position, he cites to the absence of any

6      description of ameliorative and written assessments  by multiple BHS Mental Health staff

7      and  officials that kept a record of behavior assessments and made notes related to

8      behavior modifications recommendation, and did not directly address plaintiff mental

9      health psychosis,  and the Plaintiffs own Inmate Communication Forms and Grievances

10     that the mental health treatment he received while at SRCI has failed to address his actual

11     mental health symptoms for which Mental health staff documented that there was **No-**

12     **Change in Condition**. **(see Plaintiff Exhibit #-1 & Exhibit #-2 :** ODOC BHS

13     Medication Progress Notes and BHS Progress Notes)

14

15  **35. Supporting Fact  III :**Plaintiff Mr. Dean's position is further supported by the Inmate

16     Communication Forms  and Grievance which states that Defendants "failed  to treat  Mr.

17     Deans mental health conditions, and the care he  received at Snake River Correctional

18     Institution was so cursory or non-effective his condition either worsened or remained the

19     same. **(see Plaintiff Exhibit # 6-A:** Inmate Grievance and Inmate Communication Form)

20

21

22

23

24

1

2

3

4

5

6                               **CLAIM  I**

7                          **MUNICIPAL LIABILTY**

8    **36.** Dr. Trudy Evans examination shows inconsistencies in her declaration. She diagnosed

9       Borderline Personality Disorder: "BPD is a disorder Characterized by among other

10      symptoms, extreme emotions, impulsiveness, frequent mood swings, anxiety, and bouts

11      of depression. although the symptoms of BPD can be managed with appropriate

12      medication, there is no medication that directly treats BPD itself."

13   **(see Plaintiff Exhibit  #-4** : Declaration of Trudy Evans: **Page-2 at Paragraph-6**)

14

15   **37.** On August 10th 2017 Dr. Trudy Evans wrote in in her Objective Findings: " Ms. Ingals,

16      QMHP is also a participant in this meeting. A/O x 4 with good grooming. He makes good

17      eye contact with both providers. His speech is clear with RRR. Thoughts are organized

18      and relevant, no delusional content. He is pleasant and easily engaged in dialogue. He

19      remains calm throughout the meeting.

20

21   **38.** He is proactive in his care today. Perceptual disturbance are not present or reported.

22      Weight: 208#.  Dr. Trudy Evans Wrote Diagnosis per DSM-5: 301.83  Borderline

23      Personality Disorder DO, HX Medication Misuse. And under the Question: Has there

24

1    been a change in diagnosis? Dr. Trudy Evans Marked-No, with an X.

2    **(see Plaintiff Exhibit #-1:** ODOC-BHS Medication Progress Notes: **Pages-8)**

3

4

5

6    **39.** Plaintiff contends that  the record is inadequate to assess plaintiff's mental impairments,

7    and that he continues to suffer from PTSD. Dr. Trudy Evans has endorsed the practice of

8    manipulating her assessments to conform to selective symptoms, which tend to  justify

9    limited treatment of  Borderline Personality Disorder (BPD)  The record now contains no

10    new medical evidence to enable that assessment;

11

12    **40.** On October 17th, 2018, Dr. Trudy wrote her final Subjective Report: " Dean refuses to

13    attend his appointment today. He brings a kyte (Inmate communication Form)he has

14    written and gives it to the OS to place in BHS medical records file. The kyte states, in

15    part, that he is revoking his consent to any further mental health care provided by me."

16    **(see Plaintiff Exhibit #1:** ODOC- BHS Medication Progress Notes **Page-16)**

17

18    **41.** It is, therefore, the law of the case that the record must be developed further before

19    plaintiff's  conceded, Dr. Trudy Evans  evaluation, which is not the most complete

20    medical opinion in the record.  **(see Plaintiff Exhibit #-4:** Declaration of Trudy Evans:

21    **Page-2 Paragraph-5)**

22

23    **42.** Thus, that opinion, even if credited as true, would not establish  Finality. The record as a

24    whole here creates serious doubt as to whether the plaintiff is receiving Ameliorative

1    <u>Mental Health Care,</u> It may be that plaintiff's failure to seek treatment and the

2    Discontinuation of all of plaintiff mental health medication, and a Systematic

3    misdiagnosis are in fact actual symptoms of his mental health condition, and it was error

4    for the Malheur County Court to fail to consider that possibility.

5

6    **43.** But the absence of Ameliorative Mental Health Care is apparent in the record and Dr.

7    Trudy Evans, and Darci Jennings, inconsistent statements are widespread and substantial.

8    In the absence of a medical opinion that fully engages with the potential relationship

9    between plaintiff's resistance to treatment, and appropriate mental diagnosis, this court

10   should issue a writ so that plaintiff immediate mental health concerns may be properly

11   addressed without further delay.

12

13   **44.** The controlling question therefore remains whether Dr. Trudy Evans and Darci Jennings

14   took objectively reasonable steps to address The plaintiff serious medical need. It may be

15   that monitoring, rather than intervening, was not reasonable under the circumstances.

16

17   **45.** On August 24th, 2018 Indeed, Dr. Darci Jennings Trudy Evans concedes in her written

18   assessment: 301.83 BPD mod/ LOF 3 due to his being uncooperative during our

19   appointment. He (Mr. Dean) has went to MHC 2 times (Mental Health Central Medical)

20   recently reporting an increase in anxiety yet did not report any to me.

21

22   **46.** "He is working as a laundry cart pusher, working on his legal work, exercising, playing

23   basketball with other and calling people outside of the institution which indicates he is

24

1  functioning well "( Plaintiff is unable to play basket ball due to a back injury, this

2  assessment was misrepresented by Darci Jennings on a regular basis)

3

4

5

6

7  **47.** The Assessment continues: "He reports not getting more than 4 hours of sleep in 24 hours

8  yet does not appear tired in the short amount of time we were talking, he is not yawning,

9  there are no bags under his eyes, he is not rubbing his eyes or struggling to maintain

10  focus. He refused to talk about anything except his desire to have a <u>comprehensive mental</u>

11  <u>health assessment</u>. "( the type of assessment which with a series of physiological test

12  provide an accurate diagnosis and treatment consistent with actual mental health

13  condition.

14

15  **48.** The Plaintiffs last comprehensive mental health assessment was done in 2014 at Coffee

16  Creek Correctional Facility, Intake, where he received proper care consistent with his

17  PTSD condition. Since arrving at SRCI  December of 2014 no new Comprehensive

18  Mental Health  Assessment was provided) The written assessment Continues:  He was

19  demanding, uncooperative and aggressive so I told him he could leave. Per SARC

20  reviews he has not had any suicide reviews since 9/20/2015 and that was not deemed a

21  SA. (**see Plaintiff Exhibit #-2:** <u>ODOC-BHS Progress Notes</u>: **Page-15**)

22

23  **49.** Mr. Dean arrived at SRCI  December 2014 from Coffee Creek Correctional Facility and

24  now in 2019 he is in the same acutely mental state of battling PTSD. He has been

1    receiving treatment under a endorsed Diagnosis of Borderline personality disorder. His

2    Treatment for PTSD could have been improved if he was receiving Ameliorative

3    Treatment, such as  basic therapeutic interventions, and appropriate diagnosis and

4    medication.

5

6

7    **50.** On that basis alone, a jury could reasonably infer that the care Mr. Dean.  received was

8       deficient. Moreover, as a matter of common sense, a jury could find that an inmate

9       described On December 6th 2018 Assessment Line# 5, required more than observation,

10       assessment, and, at best, triage counseling Which Read : " He  reports suicidal and self-

11       mutilating behaviors and gestures while in the community." (Inmate General Population)

12       the remainder of the assessment seem to be a cut and past insert from a website, listing

13       symptoms of Borderline Personalty Disorder. All Symptoms were listed on a day that the

14       Plaintiff was not even seen, by Darci Jennings. It was a comprehensive Chart and Records

15       Review for diagnosis clarification, which was a substitution for an actual Mental Health

16       Assessment Evaluation .

17

18    **51.** This was in response to Plaintiff repeated request for a Comprehensive Mental Health

19       Evaluation. Instead it was a Comprehensive Chart and Records Review,( Reading A

20       Inmate Past Medical Record) endorsing what Darci Jennings and Other BHS Staff had

21       already written in the record. (**see Plaintiff Exhibit #-2**: <u>ODOC BHS Progress Note:</u>

22       **Pages 20-27**)

23

24

1    **52.** The report of Dr. Trudy Evans, Clark, and Jennings  and the Mental Health Assessments

2    which support the inference that care was medically unreasonable, further bolster that

3    conclusion.  Since a trier of fact could find that Dr. Trudy Evans,  failed to take

4    reasonable ameliorative steps.

5

6

7

8    **53.** The next issue is whether that failure was in the face of a known or obvious substantial

9    risk of serious harm to the Plaintiff , Mr. Dean. There is ample evidence from which a

10    jury could find that the Defendants  should have known, and likely knew, that the

11    Plaintiff  required care beyond that which was offered at  Snake River Correctional

12    Institution, and that he stop receiving treatment for PTSD, instead was offered limited

13    treatment for Borderline Personalty Disorder,   a condition not supported by a clinical

14    finding but based on a Comprehensive Mental Health Assessment, and, more generally

15    proper treatment and medication for the PTSD condition he suffered, was available at

16    SRCI.

17

18    **54.** In regards to a accurate Diagnosis, Mental Health Classification. To begin, Dr. Trudy

19    Evans and Darci Jennings, own description of  Mr. Deans condition, as well as his,

20    acknowledged review of the same by other staff, suggests that they was aware of its

21    serious nature.

22

23    **55.** Dr. Trudy Evans colleague Dr. Jessica Clark noted similar concerns and recorded equally

24    alarming descriptions in Mr. Deans  inmate and medical logs under Inerim Information,

1    which read: Reported frustration with BHS and BHS Provider, doesn't feel he is receiving

2    appropriate care,( **see Plaintiff Exhibit # 1**: ODOC-BHS Medication Progress Note:

3    **Pages 1**)

4

5

6

7

8    **56.** BHS staff at Snake River Correctional Institution never created ameliorative treatment

9    plans for prisoners, (see Plaintiff Exhibit #4 and Exhibit-5: Declaration of Trudy Evans/

10   Declaration of Darci Jennings) . Although mental health staff could refer patients to a

11   contract psychiatrist, It was well known that 20-minutes video conference once every 4-

12   6weeks was because the  psychiatrist had extremely limited hours, or under staff.

13

14   **57.** Prison Mental Health  official's deliberate indifference must also harm the prisoner. Jett,

15   439 F.3d at 1096. Here, there is evidence from which a reasonable jury could find that,

16   because of   Dr. Trudy Evans and Darci Jennings  failure to take reasonable ameliorative

17   steps, Mr. Dean suffered through an unnecessarily long period of psychosis and continued

18   to suffer from  Post-Traumatic Stress Disorder ("PTSD"). (**see Plaintiff Exhibit # 6-D**:

19   ODOC-Inmate Communication Forms)

20

21   **58.** With a  Ameliorative treatment plan in place Plaintiff mental health care would have

22   resulted in a shorter or less intense period of psychosis. In addition, the treatment records

23   of Dr. Trudy Evans and Darci Jennings reveal a prolonged history of  psychosis Taken

24   together, a reasonable jury could find that Dr. Trudy Evans, and Darci Jennings and Brad

1    Cain was  deliberate indifference to Plaintiff  serious medical need which caused Plaintiff

2    to suffer "unnecessary and wanton" pain. (see **Plaintiff Exhibit # 6-A**)  and a Deprivation

3    of a Constitutional Right.

4

5

6

7

8    **59.** As relevant here, a substantial risk of serious harm, and therefore a potential deprivation

9    of due process,  exist based on SRCI, and ODOC failure to provide ameliorative medical

10   care beyond regular monitoring and assessment.

11

12   **60.** As such, if there is evidence from which a reasonable jury could find that  Snake River

13   Correctional Institution(SRCI) had a practice of failing to direct constitutionally

14   mandated actions, or otherwise directed their officials to engage in unconstitutional

15   practices, then they may still be liable to Plaintiff, even absent a finding that any

16   individual official is liable.

17

18                    **Policies and Customs or Lack of Policy**

19

20   **61.** In this case Defendants, SRCI, and ODOC, failed to provide ameliorative mental health

21   treatment, as part of there medical policy. The next question, then, is whether Snake

22   River Correction Institution  had policies or customs which either created a substantial

23   risk of serious harm to Plaintiff or the lack of policy relating to Ameliorative Medical

24   Treatment.

1

2                                  **Systemic Misdiagnosis**

3    **62.** Dr. Trudy Evans carried on a practice of Systemic Misdiagnosis of prisoners under her

4         care, in order to limit treatment. At all  time treatment was recorded based on Mental

5         Health Assessments and  not Clinical findings.

6

7

8    **63.** Dr. Trudy Evans , made treatment decision around a set diagnosis for which she provided

9         written symptoms, selected, or observed, and would usually fail to list all the symptom a

10        prisoner was having or "cherry pick" the symptoms she wanted to record.

11

12   **64.** The treatment was always created around particular diagnosis, rather than a Mental

13        Condition. Symptoms were sometime misrepresented, or exaggerated to fit within the

14        frame of a diagnosis, with a  limited type of care, in this case, Borderline Personality

15        Disorder.( BPD) which limited the treatment plaintiff received, while denying Plaintiff

16        treatment for PTSD.

17

18   **65.** A plaintiff contends that SRCI and ODOC had a permanent and well-settled practice, or

19        "custom," of Systemic Misdiagnosis which gave rise to the constitutional violation.

20

21   **66.** Plaintiff contends that on more than  "one or two incidents" systemic misdiagnosis

22        occurred at SRCI and that  a policy or custom exists, in misdiagnosis which created a

23        substantial risk of serious harm, to the Plaintiff.

24

1                               **Lack of Ameliorative Policy**

2    **67.** Plaintiff alleges an extensive and fragmented absence of Ameliorative Medical Care

3         policies and customs on the part of Snake River Correctional Institution. In the interest of

4         efficiency and clarity, the Plaintiff divides these  allegations against SRCI and ODOC

5         into three categories.

6

7

8    **68.** The first category relates to Comprehensive Mental Health Assessment. Snake River

9         Correctional Institution had a practice of failing to provide updated assessments of

10        Inmates who had not had a Comprehensive Mental Health Assessment within 3-years or

11        since the time a inmate entered the Prison system at Coffee Creek Correctional Facility,

12        in the case its been   5-years since for plaintiff has received a Comprehensive Mental

13        Health Assessment.

14                              **Chart Review Assessments**

15   **69.** Plaintiff alleges Systematic Misdiagnosis of prisoners based solely on chart review

16        (Reading an Inmate Medical Records, in the Inmate Absence). The BHS Staff carried on

17        a practice of looking through a prisoner medical records in the inmates absent, then

18        creating a written assessment, and making a diagnosis,  rather than In-person observation.

19        BHS Staff at SRCI had a custom of creating a written assessment of prisoners mental

20        health conditions even if that Prison was not actually observed.

21

22   **70.** Defendant SRCI and ODOC,  had a custom of failing to provide ameliorative mental

23        health care and, relatedly, adequate psychiatric staffing and supervision. With respect to

24        the adequacy of care, the record is replete with evidence that Plaintiff never received

1    ameliorative care at Snake River Correctional Institution. A jury could find that

2    observation and assessment, without more, do not constitute treatment for purposes of the

3    Due Process Clause.

4

5

6

7

8    **71.** As further evidence of these shortcomings, Plaintiff also argues that Defendant SRCI and

9    ODOC, also had a custom of inadequately staffing and supervising its mental health team

10   at Snake River Correctional Institution. In This case case, it is uncontested that there are

11   no, On-site regular evaluation with a qualified Mental Health Provider.

12

13   **72.** Instead evaluation are conducted via video conference at Snake River Correctional

14   Institution(SRCI) (s**ee Plaintiff Exhibit #-3**: Respondent Trial Memorandum: **Pages-**

15   **4**)This encounter, lasted "no more than 15 minutes" and consisted solely of offering a

16   PTSD sufferer Mr. Ernest lee Dean delusional  psychotropic medication, for Borderline

17   Personality disorder.

18

19   **73.** There is also evidence that Snake  River Correctional Institution lacked  an onsite clinical

20   supervisor for QMHPs, (**see Exhibit # 6-B**: Inmate Communication:)and that the Health

21   Service Administrator split time between SRCI and a facility in Oregon. A reasonable

22   jury could find that, based on the paltry hours worked by Dr. Trudy Evans in and the

23   absence of an onsite clinical supervisor, SRCI had a custom of inadequately staffing and

24

1   supervising its mental health division and that, along with the lack of ameliorative care

2   offered by available staff, this created a substantial risk of serious harm.

3

4   **74.** Plaintiff had a serious medical need and sufferd from PTSD. SRCI Mental Health

5   Assessments were, inadequate to meet Plaintiffs need. SRCI and ODOC carried on a

6   "custom of which the supervisor must have been aware.

7

8

9   **75.** Oregon Department of Corrections (ODOC was responsible for medical care at Snake

10   River Correctional Institution(SRCI) a reasonable jury could find that Oregon Department

11   of Corrections , through Dr. Donald Dravis, the Chief Psychiatrist, was actually or

12   constructively aware of SRCI custom inadequately staffing and supervising its mental

13   health team. (**See Plaintiff Exhibit# 6-C:** Inmate Communication Form)

14

15   **Deliberate Indifference.**

16

17   **76.** Plaintiff alleges an extensive and fragmented list of deficient policies and costumes on

18   the part  of Snake River Correctional Institution. (SRCI) Plaintiff specifically arguers that

19   SRCI had a custom of failing to provide adequate mental health assessments with clinical

20   findings. In fact the current policy under Mental Health Assessments, does not include

21   clinical findings, as part of a evaluation. ( **see Plaintiff Exhibit #6-G**: Inmate

22   Communication Form: **Pages 1**)

23

24

1   **77.** The language for mental health assessment is vague and insufficient to provide a adequate

2      evaluation without a clinical finding. The vague Policy Reads: Mental Health

3      Assessment: A Process in which an inmates need for mental health service is determined

4      through an evaluation of the inmates strength, goals, needs, and current level of

5      functioning. **See Policy at:  OAR 291-124-1010 (8).**

6

7

8

9

10   **78.** No where in the definition for mental health assessment does it allow for chart review

11      evaluations. There is no possible way to determine current level of functioning if the

12      inmate is not present. Yet this custom is perpetuated by mental health staff, and the

13      mental health assessments are constitutionally insufficient.

14      (**see Plaintiff Exhibit # 6-G**: **Pages 2**)

15   **79.** SRCI Mental Health staff, had a custom of creating written mental health assessments on

16      inmates during evaluations without actually observing the inmate. Diagnosis were made

17      based on these written mental health assessment. The mental health records were

18      endorsements of a particular diagnosis. A course of treatment was provided according to

19      these written assessments, rather that clinical findings. (**See Plaintiff Exhibit #-1** ODOC-

20      BHS Medication Progress Note: **Page-13**) Plan: based on assessment, continue meds as

21      above staffing will be scheduled with BHS Manager and QMHP follow up 6 weeks;

22      sooner with concerns.

23

24

**80.** Plaintff alleges SRCI and ODOC  knew or should have known that these practices were likely to create such a risk or lead to violations by employees. ( **Plaintiff' Exhibit# 6-D**: Inmate Communication Forms: **Pages 1-6**) A jury could find it obvious that failing to perform these services would likely result in dangerously deficient mental health care, and, indeed, SRCI and ODOC, own policies evidence that it understood these risks.

### Moving Force.

**81.** Finally, having found evidence that Oregon Department  Of Corrections(ODOC)  and Snake River Correctional Institution (SRCI)  had policies and customs reflecting their deliberate indifference to Plaintiff serious medical need, Plaintiff contends  that these practices were the "moving force" behind Plaintiffs injuries.

**82.**  Plaintiff alleges that the  policy or custom as presented in this complaint is "closely related to the ultimate injury, that the injury would have been avoided" had SRCI and ODOC employed an appropriate policy. (**see Plaintiff Exhibit # 6-G**: Inmate Communication Form: **Pages-3-7**)

**83.** Plaintiff contends that  SRCI, practices are closely related to Plaintiff  prolonged psychosis and PTSD. and that SRCI failure to provide ameliorative care, including

1    through Dr. Trudy Evans, or Darci Jennings is also closely related to Plaintiffs prolonged

2    psychosis and PTSD. (see Plaintiff Exhibit 6-E: Inmate Communication form: Pages 1-5)

3

4    **84.** Both suggest that further treatment, including appropriate staffing and supervision, would

5    have resulted in a shorter or less intense period of psychosis. In addition, the treatment

6    records of Ernest Lee Dean  (diagnosing and describing BPD) symptoms . . . are directly

7    related to" his time at SRCI), support the conclusion that these failings prolonged

8    Plaintiffs  psychosis and caused him to be denied treatment for PTSD.

9

10

11

12    **85.** Taken together, a reasonable jury could find that SRCI customs, as well as Oregon

13    Department of Corrections ratification of those customs, were the moving force behind

14    Plaintiffs  injuries. (see Plaintiff Exhibit# 6-F: Inmate Communication From: Pages 1-3)

15

16    **CLAIM 2**

17    **SUPERVISORY LIABILTY FOR DELIBERATE INDIFFRENCE**

18

19    **86.**        **Unconstitutional Conditions  of Confinement**

20    Plaintiff alleges that defendants; Dravis, Ruthven, and Smith, knowledge of the

21    unconstitutional conditions in the prison at SRCI, including there knowledge of the

22    culpable actions of there subordinates, coupled with there inaction, amounted to

23    acquiescence in the unconstitutional conduct of there subordinates.,

24    (Dr. Trudy Evans, and D. Jennings).

1

2                                    **Statutory Duty**

3    **87.** Defendants; Dravis, Ruthven, and Smith are required by statute to supervise qualified

4        Mental Health Associates (QMHA) and Qualified Mental Health Professional (QMHP),

5        at SRCI.

6

7

8

9

10

11

12   **88.** Plaintiff alleges that  Psychiatric treatment administered by QMHA, and QMHP

13       Specifically by  Dr. Trudy Evans, Dr. Clark, and D. Jennings were used for punitive

14       purposes, and defendant  Dr. Daryl Ruthven knowingly refused to terminate a series of

15       acts by Dr. Clark, which he knew or reasonably should have known caused Plaintiff

16       Constitutional Injury.

17

18   **89.** On April 15th,2016 Plaintiff suffered a mental health psychosis, due to Dr. Clarks failure

19       to conduct a timely chart review of plaintiff medications. A Chart Review is when a

20       Prisoner Medical records are looked at in order  assess medication dosage level, and

21       address side effect issues,

22

23   **90.** Plaintiff sent an Inmate Communication form to Dr. Clark at the  time Plaintiff reported

24       complaints of Anxiety Attacks, Chronic Migraines Headache, Plaintiff medications was

1   delayed 1-moth before he received a chart review. ( A chart review is a assessments of the

2   medication an inmate is prescribed in order to make proper adjustment to dosage level).

3

4   **91.** On April 18th, 2016 Prison officials response to the  Plaintiff Inmate Communication

5   Form was BHS-Staff who simply wrote that an email would be sent to the proscriber to

6   move Prozac to Am. **See Plaintiff Exhibit # -7**

7

8

9

10

11

12   **92.** On June 27th, 2016, Plaintiff still suffering a mental health psychosis due to Dr. Clark

13   refusals to properly adjust Plaintiff medications. Plaintiff sent an Inmate Communication

14   Form to J. Bugher, MHS Manager at the time at SRCI, with reports of Severe Anxiety, 4-

15   days without eating, and less than 3-4 hours of sleep, and was experiencing tremors.

16

17   **93.** On June 28th, 2016, Prion Official responded and wrote that an appointment with mental

18   health was scheduled with a Mental Health Counselor (MHC). **See Plaintiff Exhibit #-8**

19

20   **94.** Defendants, Dr. Daryl Ruthven received chart review reports on Plaintiff mental health

21   care during this time and was notified by email specifically another Prison Mental Health

22   staff Ms. Wagner on two separate occasions that there were problems with Plaintiff chart

23   reviews and that Dr. Clark was the medical provider at that time.

24

1   **95.** On November 30th, 2016 Plaintiff filed an Inmate Grievance against Dr. Clark and

2   reported problems with ongoing Depression, Anxiety and Sleep Deprivation. Plaintiff

3   was also falsely accused of misrepresenting detail about his mothers death according to

4   Dr. Clark following Plaintiff complaints about the chart review.

5   **See Plaintiff Exhibit # -9**

6

7

8

9

10

11

12   **96.** Dr. Clark couched Plaintiff complaint about chart reviews, into her own mental health

13   status reports about the Plaintiff, and crated a new diagnosis in order to highlight Plaintiff

14   complaints and grievances about her, as mental health symptoms.

15

16   **97.** Dr. Clark made drastic changes in the plaintiff medication, the change occurred without

17   an in-person appointment or Mental Health Assessment. Plaintiff was given a new

18   diagnosis based on discussions between Dr. Clark and a Prison BHS-Counselor,with out

19   Plaintiff being present, or evaluated, in person. **See Plaintiff Exhibit #- 9**

20

21   **98.** On December 22, 2016, Dr. Clark wrote in her response to the plaintiff grievance and

22   denied downgrading plaintiff diagnosis, however what is clear is that the change did not

23   occur based on a in person appoint for mental health assessment.

24   **See Plaintiff Exhibit #- 10**

1

2    **99.** Defendant, Dr. Daryl Ruthven, received updated reports during this time from Dr. Clark,

3    and made no attempts to intervene or ensure  that Plaintiff was actually being seen in

4    person during the time Dr. Clark delayed Plaintiff chart reviews, and changed his

5    diagnosis. Its common Procedure among Mental Health Professionals  to Assess a Patient

6    before making drastic changes in medication  and diagnosis.

7

8

9

10

11

12    **100.**        On June 3rd 2017, Plaintiff filed an Inmate Grievance Appeal to Dr. Clark

13    response  for the change in medication and  diagnosis. Plaintiff argued in the grievance

14    appeal Dr. Clark claim that the change in diagnosis reflects  current Psychiatric

15    Symptoms. Plaintiff clearly pointed out that Dr. Clark used policy as an excuse not to

16    provide effective medications in treatment of symptoms. **See Plaintiff  Exhibit #- 11**

17

18    **101.**        On Jan 10th 2017, Defendant Dr. Daryl Ruthven in his response to Plaintiff

19    grievance appeal claimed that clinicians have not seen objective evidence to support the

20    previous diagnosis of Post Traumatic Stress Disorder (PTSD), and claimed that plaintiff

21    PTSD was originally based on self reports, and claimed it was inaccurate. This is contrary

22    too how Dr. Clark stated the she reached the conclusion based on her discussion with

23    another BHS-Counselor Ms. Ingalls. This was not a Mental Health Assessment

24    Procedure, but rather an isolated discussion without examining the Plaintiff Symptoms.

1

2    **102.**      This implied that Plaintiff was being treated for months or years based on

3    plaintiff diagnosis of himself, and they recently reached the conclusion it was wrong, but

4    not until Plaintiff filed complaints and grievances about his  mental health care, there is a

5    causal connection between the Plaintiff complaints against Dr. Clark, and the timing of

6    this new conclusion regarding change in medications and diagnosis, which had the effects

7    of punishment.

8

9

10

11

12    **103.**      Defendant, Dr. Daryl Ruthven also stated in his response and alleges that Plaintiff

13    repeatedly requested benzodiazepines and implied that Plaintiff sole purpose was to abuse

14    drugs. Plaintiff has not written an  inmate communication requesting this medication,

15    Plaintiff Communications reported complaints of Anxiety, Sleep Deprivation and the lack

16    of a chart review, all issues that Dr. Daryl Ruthven had knowledge of and made no

17    attempts  to address them in his written response. **See Plaintiff Exhibit#- 12**

18

19    **104.**      It is clear that there were no adequate clinical findings for changing Plaintiff

20    diagnosis and medications since defendants failed to actually conduct a mental health

21    assessment on Plaintiff condition in person. This is a drastic departure from a standard of

22    care and what is acceptable psychiatric assessment in the mental health community.

23

24

105.    There was no way to reach such a drastic change in Plaintiffs  mental health care based on Dr. Clark and Ms. Ingalls discussion about the Plaintiff in his absence, and then claiming the decision reflects plaintiff current Psychiatric Symptoms.

**Casual Connections**

106.    On February28th, 2017, Plaintiff filed an appeal to Defendants Dravis response and clearly pointed out further punitive punishment by Dr. Clark, when she drastically reduces plaintiff mental health medication of Elavil, after learning of plaintiff written complaint against her.

107.    Dr. Clark alleged that plaintiff "Elavil" was reduced based on lab resulted test of Plaintiff "Elavil" level in his blood being at a toxic level. However the fact is Dr. Clark knew of the lab results for 3-months and made no attempt to reduce plaintiff "Elavil' until Plaintiff filed an Inmate Grievance against her

108.    These action further support, vindictiveness and punitive mental health treatment based on the timing of Dr. Clark reduction of Plaintiff medication. and  the fact that Plaintiff Elavil level were allegedly at a toxic level, information she sat on for 3-months.

**See Plaintff Exhibit#-13**

1    **109.**      Defendant, Dr. Daryl Ruthven, continued to  receive weekly reports from Dr.

2    Clark, his Subordinate responsible for reporting mental health treatment of prisoners at

3    SRCI.

4

5    **110.**      Dr. Daryl Ruthven, continued to allow Dr. Clark to make changes to Plaintiff

6    mental health care without providing a visual assessment in person, video assessment.

7    Plaintiff condition worsened over time as  Dr. Daryl Ruthven received weekly reports.

8    Plaintiff condition was treated as Non-Emergent. **See Plaintiff Exhibit#- 14**

9

10

11

12

13

14                                          **CLAIM 3**

15              **SUPERVISORY LIABILTY FOR DELIBERATE INDIFFRENCE**

16

17    **111.**      Defendant Dr. Donald Dravis, own culpable in actions in the training, supervision

18    or control of his subordinates, created a hazardous condition of plaintiff confinement.

19

20    **112.**      Plaintiff mental health provider was replaced by Dr. Trudy Evans at the end of

21    2017. Dr. Evans who took over as Plaintiffs mental health provider, was determined from

22    the very beginning, according to her own statement to "treat patient inmates according to

23    there attitude."

24

113.    Dr. Evans continued with the abusive treatment tactics, of her predecessor, and followed the same course of care suggested by Dr. Clark, before transferring Plaintiff mental health records to the care of the new mental health provider Dr. Evans.

114.    Under Dr. Evans care, Plaintiff condition continued to worsened by the use of untrained or unqualified medical Staff at SRCI who were designated to be responsible for prison mental health medications during Plaintiffs transfers to court.

115.    Plaintiff suffered a seizure upon  arriving at the Clackamas County Jail for a court hearing in a criminal case, and went 2-weeks without medications prescribed by Dr. Evans.

116.    After Plaintiff return to SRCI from court, he went another 2-weeks without his mental health medications, and suffered symptoms of withdraw, Clonic Seizures, and Migraine Headaches.

117.    Plaintiff sent an Inmate Request to Dr. Evans, who made a statement to plaintiff during a 20-minute video assessment and stated: "So I hear you like to complain a lot, don't bother sending me a bunch of Inmate Communication  Request, I will see you every 45-60 days to check on your mental health status."

118.    Plaintiff filed an Inmate Grievance against Dr. Trudy Evans and pointed out that Dr. Evans failed to fax a copy of plaintiff medication list to county Jail after leaving for

1    transport. His medication was delayed after he return to SRCI from court resulting in

2    plaintiff 2-week delay in medication.

3

4    **119.**    Dr. Trudy Evans denied any wrong doing, and continued to send weekly reports to

5    Dr. Donald Dravis, who was told that a medication list was faxed to the county Jail. But

6    this turned out to be false, as the receiving county was forced to send 3-faxed documents

7    to Dr. Evans requesting the list of medication the Plaintiff was prescribed. It took nearly a

8    month to obtain a medication list from Dr. Evans.

9

10

11

12

13

14    **120.**    On May 2, 2018,  Defendant Dr. Donald Dravis responded to Plaintiff grievance

15    appeal citing a policy of the Oregon Department Of corrections, procedure 3 P-E-03,

16    which deals with transfer screening.

17

18    **121.**    This was an attempt to justify Dr. Evans reckless disregard in providing Health

19    care staff a list of medication to be faxed. Dr. Evans did not prepare a list of medications,

20    as required by policy. **See Plaintiff  Exhibit- # 15**

21

22    **122.**    On September 10th, 2018, Plaintiff reached out to defendant, Dr. Donald Dravis,

23    and in a written Inmate communication form, Plaintiff reported to Dr. Dravis that he was

24    suffering an increase anxiety effecting his ability to sleep.

*Prisoner Civil Right Complaint*    Form 17.030
                                      *42 U.S.C 1983*

123.    Plaintiff reported to Defendant, Dr. Donald Dravis that Dr. Evans ignored his

mental health compliant and concerns. Dr. Evans was notified of the adverse side effects

Plaintiff suffered from the prescription of "Lepro" he was prescribed for depression by

Dr. Evans Her  response was an increase in the dosage from 15 milligrams a day to 40-

milligrams a day, as a  result Plaintiff suffered acute gaps in short term memory function.

124.    Defendant, Dr. Donald Dravis, after having knowledge of the hazardous mental

health treatment to plaintiff health, with reports of adverse side effects from  the

prescription of Lexpro" which was increase by Dr. Evans. This  showed a complete

disregard for plaintiff health and safety. Dr. Dravis response on September 24th, 2018

was deliberate Indifference when he suggested that Plaintiff contact Dr. Evans about the

problem. **See Plaintiff Exhibit #-16**

## CLAIM-4

### SUPERVISORY LIABILTY FOR DELIBERATE INDIFFRENCE

125.    Defendant, R. Smith, was personally involved in the sick call procedures at SRCI,

which did not permit adequate mental health assessment of plaintiff mental health

complaints and the conditions of confinement violated the plaintiff Eighth and Fourteenth Amendment.

**126.**    Defendant R. Smith was nonetheless liable in her individual capacity because she knew or should have known about the health risk to plaintiff deteriorating physical and mental condition, due to inadequate sick call procedures. Defendant R. Smith was deliberately indifferent to plaintiff deteriorating mental health psychosis.

**127.**    On October 10th, 2018, Plaintiff reached out to R. Smith, with reports of medication withdraw due to the abrupt discontinuation of Plaintiff "Prozac without notice, or chart review.

**128.**    Plaintiff further reports in the inmate communication sent to R. Smith that he was experiencing cold sweats, nausea, and ringing in ears, and reported that the discontinued medications by Dr. Evans was punishment for filing a complaint against Dr. Evans.

**129.**    On October 9th,  2018, Defendant R. Smith wrote in her response that "Ms. Evans had addressed the discontinuing medications with nursing." No further action was taken. R. Smith, took no steps to provide a mental health referral after being informed of Plaintiff medication withdraw. **See Plaintiffs Exhibit #-17**

130.     On October 11th, 2018, Plaintiff reached out to Defendant, R. Smith and reported that he was suffering anxiety, and sever migraine which were continuing withdraw from the discontinuation of Plaintiff medication.

131.     On October 15th, 2018 the written response was less than a sentence that Plaintiff mental health complaint was sent to mental health counselor(MHC). A date stamp alleged that Plaintiff was seen on that date. **See Plaintiffs Exhibit #- 18**

132.     On October 17th, 2018, Plaintiff reached out to Defendant, R. Smith, and notified her that he was, unable to function and was suffering anxiety, distress and ongoing panic attack.

133.     On October 19th, 2018, Plaintiff received a written response from D. Jennings, (a Mental Health Counselor), who claimed that plaintiff was seen on the same date plaintiff sent the Inmate communication to R. Smith.

134.     This further shows the mind set of Prison Mental Health Staff regarding Plaintiff deteriorating psychosis it was the equivalence of receiving mental health care in written form-on paper, without any meaningful remedy.

135.     On October 23rd 2018, Plaintiff reached out to R. Smith, still suffering major
         medication withdraw, Plaintiff reported migraine headaches, dizziness, and sleep
         deprivation, even after Plaintiff was seen by Prison Mental Health Staff. Plaintiff was
         sick and unable to even  attend a BHS-Appointment with D. Jennings and R. Smith.
         Plaintiff condition  was treated as non-emergency.

136.     During the date of the Plaintiff BHS-Appointment, Plaintiff was berated, and
         threatened while he was sick and physically suffering. D. Jennings and R. Smith refused
         to send plaintiff to central medical or provide a referral with a Qualified Mental Health
         professional, even with knowledge of Plaintiff mental and physical withdraw conditions.

137.     Plaintiff attempted to leave the BHS-Appointment with D. Jennings and R. Smith,
         as he suffered withdraw sickness and was told by D. Jennings he could not return to his
         cell to lay down and was ordered to sit in the BHS waiting area until the next institutional
         movement.

138.     Plaintiff suffered tremors and was sweating profusely, the Correctional Officer on
         duty that day saw how bad Plaintiff condition was then allowed plaintiff to leave to return
         to his cell to lay down.

1

2    **139.**      On October 25th, 2018, R. Smith responded to Plaintiff written Inmate

3          Communications about his withdraw for the discontinuation of his medication. R Smith

4          gave plaintiff a written ultimatum in essence. Plaintiff medication were all discontinued

5          by Dr. Evans, when plaintiff exercised his right to refuse further treatment from

6          Dr. Evans.

7

8    **140.**      As a result all of plaintiff medications were discontinued, causing Plaintiff major

9          withdraws symptoms.

10

11   **141.**      Defendant, R. Smith Solution, in having the medication restarted was to induce

12          Plaintiff to agree to another scheduled appointment with Dr. Evans

13

14

15

16

17   **142.**      This was what Plaintiff interpreted as an extortionist tactic in order to coerce the

18          Plaintiff in to continuing treatment with the person he complained about, Dr. Evans, and

19          now being told in essence he would be given his medication if plaintiff did not excersise

20          his right to refuse. **See Plaintiff Exhibit #-20**

21

22   **143.**      On June 6th 2019, Plaintiff reached out to Defendant R. Smith, and reported that

23          D. Jennings ( Mental Health Counselor) were scheduling the plaintiff for appointment

24          with her, even after plaintiff provided several written and verbal refusal.

1

2    **144.**    These appointment schedule by D. Jennings became opportunities for harassment.

3    Plaintiff appeared at the appointment to cancel in person, and was verbally threatened by

4    D. Jennings  with Solitary Confinement in the disciplinary Segregation unit.

5

6    **145.**    On a few of these appointment Plaintiff was yelled at in the waiting area of the

7    BHS Building by D. Jennings, and told he could nor refuse a BHS-Appointment. D.

8    Jennings on one occasion punished the Plaintiff for exercising his right to refuse by cell

9    restriction  in his cell for 24-hours.

10

11    **146.**    On June 11th, 2019, Defendant, R. Smith, sent Plaintiff a written response to

12    Plaintiff Inmate Communication reporting the harassment by  D.Jenings. But, R. Smith

13    justified the harassment based solely on the fact that plaintiff has a mental health

14    diagnosis.

15

16

17    **147.**    Defendant, R. Smith made no mention of plaintiff chief complaint of medication

18    withdraw from the total discontinuation of Plaintiff mental health medications and in fact

19    continued to place the plaintiff Schedule  appointment call-out while ignoring plaintiff

20    Sick call complaints.

21

22    **148.**    R. Smith Chose to consciously avoid addressing the numerous Sick call

23    complaints or the plaintiff deteriorating condition. R. Smith to no action to Plaintff

24

1    Mental Health concerns even with the awareness of Plaintiffs mental health suffering

2    and Psychosis. **See Plaintiffs Exhibit #-21**

3

4                              **FIRST INJURY**
                                  Claim 1-4

5    **149.**        As a result of the omission and culpability of the defendants, SRCI, ODOC,

6    Dravis, Ruthven, ans Smith,  Plaintiff became extremely distressed in his effort to obtain

7    Ameliorative Mental Health Care, exacerbated by his pre-existing depression. His

8    emotional status worsened during each time he was seen via the 20-minute video

9    assessments every 45-60-days.

10

11   **150.**        Plaintiff condition for Post-Traumatic Stress Disorder worsened, including stress

12   disorder, with anxious mood, major depression, generalized anxiety disorder, and Panic

13   Disorder, Permanent Migraine Headaches.

14

15

16

17

18   **151.**        Plaintiff Psychological Condition are severe, continuing, and permanent. Plaintiff

19   sought damages, to compensate him for his extreme and sever emotional distress,

20   sleeplessness, fear and anxiety which significantly interrupted his normal daily life, and

21   activities and will continue to do so in the future.

22

23                              **CLAIM-5**

24          **EIGHTH   AMENDMENT DELIBERATE INDIFFRENCE**

**Statement of Facts**

152.    On February 1, 2015, Plaintiff was diagnosed with a serious medical condition

Chronic Degenerative Disc Disease. **See Plaintiff Exhibit #- 22**


153.    On May 16th, 2016, Plaintiff wrote a letter to Colette Peters, and reported sever

Chronic Pain, and a discontinuation of all pain medications by defendant Garth Gulick.

**See, Plaintiff Exhibit #-23**


154.    Plaintiffs Degenerative Disc Disease went untreated since February, 15, 2015,

thru 2019., resulting in substantial and recurring pain and discomfort.


155.    The untreated Degenerative Disc Disease created a significant adverse effect on

Plaintiff daily activities including a significant risk of permanent disability.


**THE SUBJECTIVE STANDARD OF DELIBERATE  INDFRRENCE**

156.    Since being diagnosed with Degenerate Disc Disease in 2015, Plaintiff has sought

and been delayed medical treatment for back, and spinal Pain for 4-years, and has

suffered unnecessary and wanton infliction of pain.

157.    Plaintiff alleges Deliberate indifference violations against defendant Garth Gulick, the Prison Medical Provider for acting with deliberate indifference to Plaintiffs Degenerative Disc Disease, Back and Spinal Pain.

158.    On May 3rd, 2016 Plaintiff filed an Inmate Grievance against Gulick. Plaintiff alleges Defendants Gulick was deliberately indifferent to Plaintiff unnecessary and wanton infliction of pain manifested by his response to Plaintiff medical needs. **See Plaintiff Exhibit #-24**

159.    On December 13th, 2017, Plaintiff wrote defendant Gulick, a Sick call request, Via Inmate Communication form, with reports of chronic and substantial back pain, which had spread to Plaintiffs testicles.

160.    On December 16th, 2017, Prison officials sent only a written response, scheduling another appointment with defendant Garth Gulick. However Plaintiffs pain and suffering was not treated as an emergency. **See Plaintiff Exhibit #-25**

161.    On January 23rd 2019, Plaintiff wrote defendant, Gulick, with reports of chronic neck pain, worsening, with numbness and tingling.

162.    On January 24th, 2019 Prison Officials wrote in a response that defendant, Gulick, left to go to work somewhere else. In other words Gulick was a no-show, to his own scheduled appointment, and rescheduled the appointment. **See Plaintiff Exhibit #-26**

1

2                          **THE OBJECTIVE STANDARD OF DELIBERAT INDIFFERENCE**

3    **163.**       Plaintiff continues to suffer back and spinal pain, which had spread to his neck,

4         defendant, Gulick provided no medical treatment, since 2015. but insisted on scheduling

5         Plaintiff for Sham medical examinations which resulted in further delay in medical care.

6

7    **164.**       From 2015 to  2019 Defendant,  Gulick Provided no-treatment for Plaintiff

8         Degenerative Disc Disease, Back or Spinal Pain despite repeated request for care, and

9         reports of pain.

10

11   **165.**       Plaintiff asserts that defendant, Gulick, intentionally, or  maliciously denied and

12        delayed medical treatment for Plaintiff Back and Spinal pain, for 4-Years.

13

14   **166.**       On September 10th, 2019  Plaintiff sent a sick call request, via Inmate

15        Communication Form, with reports of pain in spine, and intense swelling in the lower

16        lumbar.

17

18

19   **167.**       On September, 10th, 2019 Prison Officials took no action, other than to schedule

20        Plaintiff in a referral back  to Defendant, Dr. Gulick. **See Plaintiff Exhibit#-27**

21

22   **168.**       Plaintiff had not been provided medical treatment and was in pain, without being

23        provided or offered pain medications, or medical care of any form.

24

1    **169.**    Defendant, Gulick had subjected Plaintiff to unnecessary and Wanton Infliction of

2    Pain in violation of the Eighth Amendment, and applicable to the States by the Fourteenth

3    Amendment.

4

5    **170.**    Defendants, Gulick lack of response and failure to act on plaintiff medical issue

6    for 4-years,and  delaying medical treatment for Plaintiff Degenerative Disc Disease, and

7    subsequent worsening condition of back and spinal pain, with swelling in his lower

8    lumbar was deliberate indifference and constituted unnecessary and wanton infliction of

9    pain.

10

11                  **UNNECESSARY AND WANTON INFLICTION OF PAIN**

12    **171.**    Each attempt by the Plaintiff to seek medical treatment for Back and Spinal Pain,

13    or worsening condition of the Degenerate Disc Disease, was met with the same response

14    by Defendant, Gulick, a scheduled appointment or sham medical examination, resulting

15    in absolutely no-medical treatment. **See Plaintiff Exhibit#-28**

16

17

18

19    **172.**    Plaintiff has relied on Defendant, Gulick for 4-years to treat his Degenerative Disk

20    Disease and worsening condition of back pain,which has become the equivalent of

21    "asking a arson for help to put out a fire." Defendant, Gulick has failed to provide

22    treatment, and Plaintiff medical condition has not been treated.

23    **See Plaintiff Exhibit #-29**

24

1    173.    Defendant, Gulick delay in providing Plaintiff medical treatment for 4-years for

2           back and spinal pain has resulted in Plaintiff pain in suffering which serves no

3           Penological Purpose. **See Plaintiff Exhibit #-30**

4

5    174.    Plaintiff has been diagnosed with Degenerate Disc Disease since 2015, and

6           subjected to two second Opinions, both Opinions by the same Prison Physician,

7           Defendant, Koltes.  These inadequate examination has resulted in absolutely no medical

8           treatment. **See Plaintiff Exhibit #-31**

9

10   175.    Plaintiff now suffers a worsening condition of Degenerative Disc Disease. He has

11          swelling and acute pain in his lower lumbar. Plaintiff struggles daily discomfort and at

12          times must lean against a wall to hold himself up. His condition is still treated by

13          Defendant, Gulick as a non Emergency. **See Plaintiff Exhibit #-32**

14

15

16

17

18

19                                   **CLAIM-6**

20          **EIGHTH   AMENDMENT DELIBERATE INDIFFRENCE**

21                               **Statement of Facts**

22   176.    Plaintiff has been denied a qualified right to obtain his own medical care from a

23          private non-prison medical professional at his own expense. SRCI Prison officials have

24          wrongly denied Plaintiff request for access to such outside care.

1

2    **177.**      Defendants, Gulick, Digiulio, Hemphill, Clements, and Koltes, proposed

3         treatment was that Plaintiff be seen by a Pain Specialist for his lower back pain in a TLC-

4         Review Report, but failed to actually provide such treatment.

5

6    **178.**      Defendants, Gulick, Hemphill, Koltes, Clements, and Digiulio are a group of

7         Prison Physicians and Nurses, collectively operating as the Therapeutic Level of Care

8         Committee, (TLC-Committee), and are individually directly and indirectly involved with

9         making medical treatment decision, regarding Plaintiff Medical Care at Snake River

10        Correctional Institution (SRCI).

11

12                      **Legal Issue**

13    **179.**      Defendants, Gulick, Hemphill, Koltes, Clements, and Digiulio, denial of Plaintiff

14         right to medical care from a Private Non Prison medical Professional at his own expense,

15         violates Plaintiff state granted liberty or property rights proscribed by the Protection

16         under the Due Process Clause, against arbitrary State abrogation.

17

18

19    **180.**      Plaintiff contends that he sought either a temporary medical leave from the

20         institution or permission to be examined by a doctor outside the institution at his own

21         expense but that his requests were ignored by prison officials without any statement of

22         reasons.

23

24

181.     Plaintiff was denied a fundamental right to due process based upon the manner

in which prison authorities denied his request for access to non-prison medical care.

**Plaintiff Has A Serious Medical Need**

182.     On June 11th, 2018, defendants, Gulick, Hemphill, Clements, and Digiulio

diagnosed Plaintiff with lower back pain.

183.     The treatment proposed was for Plaintiff to bee seen by a Pain Specialist.

184.     Defendants, Gulick, Hemphill, Clements, and Digiulio, failed to follow up with

this proposed treatment by failing to send the plaintiff to a Pain Specialist. This was only

treatment proposed but never provided to the Plaintiff. **See Plaintiff Exhibit #-33**

185.     From 2016 to 2019 Plaintiff was not treated nor examined by a qualified specialist

to address a worsening condition of Degenerative Disc Disease.

**Lack of Facility Equipment and Supplies**

186.     On October 16th, 2019, defendants, Gulick, Hemphill, Koltes, and Dr. Roberts a

Urologist with ODOC , Diagnosed Plaintiff with "Cervical Froaminal Narrowing Lumbar

Spine Pain." This is a worsening condition from the lower back pain, and Degenerative

Disc Disease of the Lower Lumbar. **See Plaintiff Exhibit #-34**

1

2    **187.**    The treatment proposed was CT, MRI, and 2nd Opinion by the same Prison

3    Physician Dr. Koltes.

4

5    **188.**    Defendants, Gulick, Hemphill, Koltes, Clements, and Digiulio  failed to follow up

6    with sending Plaintiff to outside care for a CT-Scan or MRI. The cost was also a

7    determining factor, following a second opinion by the Defendant, Koltes. No further

8    examination or medical care was provided.

9

10   **189.**    Defendants, Prison officials do not have adequate facility and equipment, to

11   provide Plaintiff a CT-Scan or MRI this is only available through outside medical care

12   facility.

13

14   **190.**    Defendants, Gulick, Hemphill, Koltes, Clements, and Digiulio medical equipment

15   at the Snake River Correctional Institution consist of a single malfunctioning x-ray

16   machine and no ability to conduct MRI or CT-Scan with intravenous contrast, which is

17   required to adequately determine a course of treatment for Plaintiff worsening back and

18   spinal condition.

19

20                          **Lack of Qualified Medical Staff**

21   **191.**    Defendants, Gulick Hemphill, Koltes, Clements, and Digiulio, are not able to treat

22   Plaintiff worsening Degenerative Disc Disease and back and spinal pain. Nor are they

23   certified specialist qualified to administer an MRI or CT-Scan.

24

1    **192.**      Defendants, Gulick, Hemphill, Koltes, Clements, and Digiulio have refused to

2    allow Plaintiff to qualified access to  outside care that Plaintiff condition requires.

3

4    **193.**      The rendering of medical service regarding Plaintiff medical care  has been

5    allowed by defendants Gulick, Hemphill, Koltes, and Digiulio by Non Physician staff like

6    Nurses and Health Service Managers , who have been unlawfully assigned task beyond

7    there training or left without adequate supervision.

8

9    **Plaintiff Was Required By Defendants, To Purchase Service**
     **Before Access to Outside Care Would Be Approved**

10

11   **194.**     The Plaintiff sought a Temporary medical Leave from defendants, Gulick

12   Hemphill, Koltes Clements, and Digiulio, permission to have an adequate examination be

13   conducted by a Urologist , and Ct-Scan With Intravenous Contrast. But that request was

14   denied by the Defendants, unless Plaintiff "Self Purchase." **see Plaintiff Exhibit #-35**

15

16   **195.**      Plaintiff is indigent and do not have the funds available in his inmate trust account

17   to "Self Purchase Medical Service" for outside care, but has offered to bear the cost for

18   treatment.

19

20   **Plaintiff Repeated Attempts To Obtain Access To Outside Care**

21

22   **196.**      Plaintiff sought a outside referral for medical care from Prison Officials, Hughes,

23   Landverde, and Digiulio on several occasions, but Prison official continued to create

24   excuses for avoiding Plaintiff request, without explanation.

197.    On May, 18th, 2019, Plaintiff sought a referral from Prison Officials Hughes, the Health Service Manager at the time, and reported, experiencing chronic back aches, numbness and worsening condition.

198.    Plaintiff sought an X-Ray or MRI or other appropriate diagnostic test, in order to proceed with the appropriate course of medical treatment.

199.    On March 19th, 2019 Prison officials response was a scheduled char review. (This is when Prison Medical staff review an Inmates medical records without providing a actual examination in-person). **See Plaintiff Exhibit #-36**

200.    Prison Health Service Manager Amy Hughes, took no immediate action regarding the plaintiff worsening back and spinal condition, after she was notified about Plaintiff pain and suffering.

201.    On September 30th, 2019, Plaintiff sought a referral to see a spine specialist, and reported suffering pain in the lower lumbar, with swelling.

202.    Plaintiff pain and suffering continued even after the doctor appointment with the defendant, Gulick.

1

2    **203.**    During the appointment on the 30th, of September, 2019, Defendant, Gulick would

3    not provide Plaintiff a referral or treatment. When Plaintiff asked defendant Gulick, what

4    will it take to obtain appropriate treatment for the back and spinal pain? Defendant

5    Gulick responded "if you don't like the help I'm giving you, Go to Court." He was

6    confident that nothing would be done as has been the pattern for years with complaints by

7    other inmates in the past by other inmates, some of those inmates are now deceased.

8

9    **204.**    On October 8th, 2019, Prison officials response to Plaintiff request for medical

10   referral or treatment only stated the Plaintiff issue would be presented in a "discussion"

11   by the TLC-Committee. **See Plaintiff Exhibit #-37**

12

13   **205.**    The Health Service Manager at the Prison Ms. Hughes took no immediate action

14   to provide a referral to plaintiff after she was notified about the swelling in Plaintiff

15   Lumber, and treated Plaintiff condition as a non emergency.

16

17

18

19

20   **206.**    On October 18th, 2019, Plaintiff sought a referral to a qualified outside Specialist,

21   from the new, Health Service Manager at SRCI, Ms. Landaverde, and reported that his

22   pain and suffering has been unnecessary prolonged.

23

24

207.    Plaintiff notified, Ms. Landaverde that he would suffer irreparable harm and

further deterioration unless he was timely examined and treated by an outside specialist.

208.    Prison officials response was the same, no further action was taken.

**See Plaintiff Exhibit#-38**

209.    On October 18th, 2019, Plaintiff attempts to obtain outside care was met with more

delay, and another "Second Opinion" by the same Prison Physician, Defendant Koltes,

who had conducted the first Second Opinion. Plaintiff was continuing to be shuffled back

and forth from Prison Doctor to Sick Call Nurse. Plaintiff was suffering acute pain and

swelling, while defendants provided no medical treatment. **See Plaintiff Exhibit #-38.**

210.    To the Date of this complaint, Plaintiff has not been provided an outside referral

for an  examination by a qualified specialist, and he has not received treatment from

Defendants, Gulick, Hemphill, Koltes, Clements, or Digiulio.

211.    To the Date of this complaint, Plaintiff still suffers from the same worsening

condition of Degenerative Disc Disease of the Lower Lumber, and he now suffers with

swelling and acute pain, that has gone untreated since 2015, up to the filing of this

complaint.

1

2    **212.**        To the date of this complaint Plaintiff has not been provided an X-Ray, MRI, or

3    CT-Scan since 2016 regarding his worsening Degenerative Disc Disease, Back  and

4    Spinal pain, or Swelling in the Lower Lumbar.

5

6    **213.**        To the date of this complaint, any  medical treatment for Plaintiff Disc, Back, and

7    Spinal condition has been replaced with nothing more than a series of ineffective sham-

8    medical examines by Defendant, Gulick.

9

10   **214.**        To the date of this complaint, Plaintiff back and Spinal condition has gone

11   untreated for 4-years, as a result he now suffers a worsening condition.

12   **See Plaintiff Exhibit #-39 and Plaintiff Exhibit #-40**

13

14

15

16

17

18

19

20

21

22                    **Plaintiff Attempts To Seek Access to Outside Care**
                          **From Non-Medical Prison Personnel**
23

24

215.     On October 1, 2019, Plaintiff, sought a referral to an outside specialist from a
non-medical prison official, J. Gilmore, the Assistant Superintendent at Snake River
Correctional Institution, (SRCI.

216.     Plaintiff reported that he was experiencing spinal pain and swelling tissue on the
lower lumbar of his back.

217.     Prison official only response, was to schedule Plaintiff to another "Review" with
the TLC-Committee, Providers; Gulick, Hemphill, Koltes, Clements and Digiulio.

218.     Plaintiffs attempts to seek access to outside care was met with more excuses for
delay in providing actual treatment. The act of delay was manifested in the response that:
"the TLC-Committee will review Plaintiff medical concerns for a CT/MRI or Second
Opinion ."

219.     These delay tactic were common in the response received from the defendants.
The Reviews, Discussion, and Second Opinion always amounted to No-Treatment. The
action of scheduled and sending Plaintiff for a  CT-Scan or MRI did not occur.

220.     The TLC-Reviews were nothing more than office meetings, sometimes by phone,
without actually examining the Plaintiff.

1    **221.**    These reviews were commonly called TLC Committee Reviews, which resulted to

2    absolutely no medical treatment for Plaintiff, and had no medical value related to care.

3

4    **222.**    No response by SRCI  Non-Medical Prison Officials has resulted in actual

5    CT-Scan or MRI.

6

7    **223.**    No response by SRCI Non Medical Prion Official has resulted in a referral to a

8    qualified outside specialist.

9

10    **224.**    No response by SRCI Non Medical Prison officials has resulted in actual medical

11    treatment, despite the appearance of medical care on paper, in the form of

12    "<u>TLC-Committee Reviews</u>", no meaningful action has been taken.

13

14    **225.**    Plaintiff continues to suffer from acute back and spinal pain, with swelling in his

15    lower lumbar. **See Plaintiff Exhibit #-41 and Plaintiff Exhibit #-42**

16

17

18

19

20

21

22    **AFFIRMATIVE DENIAL OF PLAINTFFS RESQUEST**
**FOR ACCESS TO MEDCICAL CARE**

23

24

226.     Plaintiffs request for access to non-prison medical care was properly made.

Defendants, Gulick, Hemphill, Koltes, Clements, and Digiulio  denied the request

without fair consideration in compliance with the requirements of Oregon Law and Due

Process.

227.     On November 8th, 2019, Plaintiff reached out to Defendant, Gulick, in an Inmate

Communication Form, with reports of pain on lower lumbar, swelling in spine, tingling in

the left shoulder.

228.     Plaintiff provided enough medical criteria that would warrant a "Temporary

Medical Leave " based on the worsening medical condition, and the lack of the institution

ability to provide necessary care, and the lack of qualified medical staff, licensed to

properly examine, diagnose, and prescribe a course of treatment.

229.     Defendants, Gulick Hemphill, Koltes, Clements, and Digiulio, conducted no

medical examination on the plaintiff after they were notified of Plaintiff worsening

condition. Plaintiff made a specific request to be treated by a medical Practitioner in

Boise Idaho, in a Request for Temporary Medical Leave, and was willing to bear the cost.

**See Plaintiff Exhibit #-43**

*Prisoner Civil Right Complaint*          Form 17.030
                                    *42 U.S.C 1983*

1    **230.**        On November 15th, 2019 Defendants responded to the Plaintiff request for

2    Temporary Medical Leave. Despite Plaintiff reports of worsening condition he was not

3    schedule a medical examination instead was schedule for a "Chart Review. "

4

5    **231.**        Chart Reviews were only used for non-emergency, low priority, medical issues.

6

7    **232.**        The proper consideration by defendants, would have been to schedule a physical

8    examination with a Qualified License Practitioner.

9

10   **233.**        But defendants Gulick, Hemphill, Koltes, Clements, and Digiulio latter began to

11   outright ignored the Plaintiff Inmate Communication Forms of Plaintiff reports of

12   Lumbar and Spinal Pain and worsening condition, they continued to treat the Plaintiff

13   medical condition as they have always done, as a non-emergency issue.

14

15   **234.**        Defendants, Gulick,Hemphill, Koltes, Clements, and Digiulio drifted away form

16   the standard of acceptable care, that is practice by the same medical community within

17   the State of Oregon, and repeatedly schedule Chart Review, and conducted TLC-

18   Committee Reviews, in replacement for Qualified Examination, Diagnose, and

19   Treatment.

20

21

22

23

24

*Prisoner Civil Right Complaint*        Form 17.030
                                            *42 U.S.C 1983*

1      **235.**      On November 9th, 1019, Plaintiff sent a duplicate request for Temporary Medical

2             Leave to Defendant, Hemphill, and reported a worsening condition, and the type of

3             criteria that required Access to Outside Medical Care.

4

5      **236.**      On November 19th, 2019 defendants, response was further evidence that they were

6             incapable and unwilling to address Plaintiff medical condition because defendants,

7             scheduled the Plaintiff for Sick Call to see a Sick Call Nurse. **See Plaintiff Exhibit #-44**

8

9      **237.**      Defendants, Gulick Hemphill, Koltes, Clements, and Digiulio, frequently used

10            sick call nurses to assess  Plaintiff condition knowing that they were not qualified

11            themselves to treat Plaintiff.

12

13     **238.**      Defendants, Gulick, Hemphill, Koltes, Clements, and Digiulio, knew that the

14            Prison sick call procedures were not adequate enough to assess  Plaintiff, without a MRI,

15            CT-Scan, or examination by a Qualified Specialist. The sick call nurses only added to

16            further delay while plaintiff continued to suffer in acute pain.

17

18     **239.**      On November, 20th, defendants, Gulick Hemphill, Koltes, Clements, and Digiulio,

19            took no action to plaintiff suffering and only wrote the Plaintiff was scheduled for sick

20            call. The sick call nurses became the only form of medical care offered.

21         **See Plaintiff Exhibit #-45**

22

23

24

1   **240.**     On November 20th, 2019, defendants, Gulick, Hemphill, Koltes, Clements, and

2   Digiulio denied the Plaintiff request to purchase care in Boise Idaho,in a TLC-Decision

3   Communication, and simply wrote, "No Medical Support." **See Plaintiff Exhibit #-46**

4

5                       **GROUNDS FOR ACCESS TO OUTSIDE CARE**

6   **241.**     Defendants, Gulick, Hemphill, Koltes, Clements, and Digiulio denial of Plaintiff

7   request for access to outside care at his own expense violated Due Process Clause against

8   Arbitrary State Abrogation.

9

10  **242.**     Plaintiff has a State-Granted Access Right that permits him to obtain care,

11  including specialized or Supplemental care from non Prison medical Professional of his

12  choice, so long as he himself and not the institution bears the cost.

13

14                     **LACK OF FACILTY, EQUIPMENT AND SUPPLIES**

15  **243.**     Defendants, Gulick, Hemphill, Koltes, Clements, and Digiulio, do not have

16  adequate facilitates, and equipment, for Plaintiff necessary medical care, even though

17  they proposed treatment for Plaintiff in the form of  MRI and CT-Scan, they failed to

18  send plaintiff to a outside medical facility capable of providing this type of examinations.

19

20  **244.**     Defendants, are not equip to provide an adequate examination in order to

21  determine a proper course of treatment.

22

23

24

## LACK OF QULIFIED MEDICAL STAFF

**245.**      Defendants, Gulick, Hemphill, Koltes, Clements, and Digiulio, are not qualified to administer an MRI, or CT-Scan, and on 3-separate occasion have scheduled Plaintiff to see a sick call nurse, even though they knew that Plaintiff condition required more.

**246.**      Defendants, Gulick, Hemphill, Koltes, Clements, and Digiulio, have been unable to treat Plaintiff medical condition, and and refused to refer Plaintiff to a Specialist who can. In this case defendants, have refused to provide both Treatment, and  Referral to Outside Medical Care.

**247.**      Defendants, Gulick Hemphill, Koltes, Clements, and Digiulio, have authorized medical service regarding Plaintiff care by unqualified <u>Prison Sick Call Nurses</u>.

**248.**      Prison sick call nurses, are not trained to treat Degenerative Disc Disease, Lumbar spine swelling. In this case defendants, Gulick Hemphill, Koltes, Clements, and Digiulio allowed the use of non-Physician staff like sick call nurses to unlawfully become task beyond there training or left without adequate supervision.

1        **PLANITFF HAS A SERIOUS MEDICAL NEED**

2    **249.**        Plaintiff has been denied medical care, by defendants, Gulick, Hemphill, Koltes,

3        Clements, and Digiulio, through unnecessary delay in examinations, treatment and

4        diagnosis as a result, Plaintiff suffers from a worsening condition of Degenerative Disc

5        Disease of the Lower Lumbar.

6

7    **250.**        Plaintiffs delay in examination, diagnosis and treatment has resulted in a swelling

8        of tissue in the lower lumbar and he suffers daily from acute pain in his spine.

9

10   **251.**        Plaintiffs medical need call for the attention of a <u>Outside Specialist</u>, and at the

11       very minimum, Pain Management. Plaintiff has not been provided pain medication to

12       help alleviate pain and suffering.

13

14       **PLANITFF REQUEST FOR TEMPORARY MEDICAL  LEAVE**
         **WAS IGNORED WITHOUT A STATEMENT OF REASON**
15
16   **252.**        Plaintiff request for a Temporary Medical Leave was not only affirmatively

     denied, the request was also ignored without a statement of reason, denying Plaintiff
17
     Due Process.
18

19

20   **253.**        On November, 11th, 2019, Plaintiff reached out to Brad Cain Superintended of

     Snake River Correctional Institution, and request emergency medical relief, reported
21
     lower lumbar swelling and great pain.
22

23

24

254.      Prison officials did not respond until November 20th, 2019 over a week later and the response suggested that Plaintiff "continue to work with his medical Provider," defendant,Gulick.

255.      Prison Officials response advised "rest, stretching, and antiinflammatory medication as a appropriate treatment." This medical advise was from a Non-Physician Prison Official, the Prison Health Service Manager Ms. Landaverde, who works in a office handling medical files,and Supervising Health Care Service.

256.      The Non-Physicians response did not address Plaintiff request for temporary medical leave, and Plaintiff lingered in acute pain and prolonged suffering, without being provided treatment. **See Plaintiff Exhibit #-47**

257.      The medical advise from the Non-Physician Prison Official, was not adequate to address Plaintiff Degenerative Disc Disease, swelling in the lumbar and spinal pain, which is the result of Disc Bulging, Vertebral Endplate Osteophyte Formation. This requires treatment beyond "rest and stretching", possibly surgery.

258.      On November 11th,, 2019, Plaintiff reached out to defendant, Digiulio, and reported pain in lower lumbar worsening condition, swelling in spine.

259.     Plaintiff continued request for Temporary Medical Leave was ignored without statement or reason, violating Plaintiff Due Process Clause of the Fourteenth Amendment.

260.     Defendant, Digiulio refused to provide Plaintiff temporary leave from prison for the specific purpose of obtaining medical service not otherwise available in the prison.

261.     On November, 25th, 2019 defendants, ignored Plaintiff request for Temporary Medical Leave, the request was answered by a Non-Physician Prison Official, who wrote the following medical advice: " Ibuprofen or Aspirin" were previously recommended to assist in reducing discomfort." **see Plaintiff Exhibit #-48**

262.     Plaintiff continued to linger in a  constant state  of acute prolonged pain and discomfort, (Plaintiff is allergic to Ibuprofen) which was recommended by a Non-Physician Prison Official.

263.     Defendant, Gulick, Hemphill, Koltes, Clements, and Digiulio proposed numerous Types of cursory treatment, on paper, but did not write an order prescribing care. Several stretching and meditation procedures were suggest in replace of access to outside care.

264.     Plaintiff care amounted to nothing more than Defendants, Gulick, Hemphill,

Koltes, Clements, and Digiulio, documenting Plaintiffs worsening condition and chronic

pain.


265.     Defendants, Gulick, Hemphill, Koltes,Clements, and Digiulio acted with reckless

disregard for Plaintiff Health and safety, by denying Plaintiff access to Outside Care, and

failing to provide Plaintiff the appropriate medical examination that his condition

required, and by allowing Plaintiff to linger in a state of constant acute pain and suffering

which has resulted in Plaintiff physical deterioration and worsening lumbar and spinal

condition.


## SECOND  INJURY
### Claim 5-6

266.     As a result of the omissions and culpability of defendants, Gulick,

Hemphill,Koltes,Clements, and Digiulio from there individual direct and indirect

involvement in denying Plaintiff Access to Medical Care, Plaintiff suffers the following

permanent impairment.

*Prisoner Civil Right Complaint*          Form 17.030
                                    *42 U.S.C 1983*

1                          **PERMANENT LUMBAR COMPLICATION**

2      **267.**        A worsening Degenerative Disc Disease in the lower lumbar, which consist of

3              swelling in spinal and lower lumbar.

4

5      **268.**        Muscle Spasm, Severe sharp pain and stiffness in joints, numbness and tingling in

6              extremities that is worsening, chronic Backache, and Pressure on spinal cord.

7

8                          **PERMANENT MIGRANE HEADACHES**

9      **269.**        Sever headaches, tense stressed feeling pain around eyes, lasting 3-hours to  3-

10             days at a time. Sensitive to light, nausea and vomiting.

11

12     **270.**        Habitual headaches on waking, dizziness, severe piercing or boring pain,

13             unilateral around the eyes, occasional swollen and droopy eyelid. Sudden onsets of

14             headaches often at night while sleeping.

15

16

17

18

19

20

21

22

23

24

1          **FIRST CLAIMS FOR RELIEF**

2                   **Claim 1-4**

3    **271.**      The lack of Ameliorative Mental Health Policy by Defendants, SRCI, and

4          ODOC, amounts to Deliberate Indifference.

5

6    **272.**      The Eighth, and Fourteenth Amendment was violated with Defendants, SRCI,

7          Practices and Custom of systemic misdiagnosis of prisoners in there care with Mental

8          conditions specifically using a blanket diagnosis of "<u>Borderline</u> <u>Personality</u> <u>Disorder</u> "on

9          the Plaintiff with inadequate mental health assessments.

10

11   **273.**      Defendants, SRCI, ODOC, are liable for constitutional violations caused by there

12         vague policy on mental health assessments officially adopted by ODOC, and promulgated

13         by its officers, staff, and agents.

14

15   **274.**      Defendants, SRCI, ODOC are liable for its customs, and individual acts or

16         decisions by its officers, agents, who are deemed by law as policy makers.

17

18   **275.**      Defendants, SRCI ODOC, failure to provide adequate staff of Qualified Mental

19         Health Professional to provide mental health care in a constitutional manner is a

20         municipal policy or custom for which damages are also sought.

21

22

23

24

1    **276.**        Defendants, Dravis, Ruthven, and Smith are individually liable under Supervisory
2            Liability for Deliberate Indifference  when culpable with there individual actions, or
3            inaction direct;ly attributed to them, resulting in Plaintiff Constitutional Injury.
4

5    **277.**        Defendants, Dravis, Ruthven, and Smith, Participated directly and indirectly in the
6            culpable action or inaction in there training, supervision, or control of there subordinates
7            which resulted in Plaintiff Constitutional Injury.
8

9    **278.**        Defendants, Dravis Ruthven, and Smith in there acquiescence in Plaintiff
10           constitutional deprivation of which the complaint demonstrated conduct that was reckless
11           or callously indifferent to Plaintiffs Constitutional rights.
12

13   **279.**        Defendants, Dravis, Ruthven, and Smith actions demonstrated personal
14           involvement in the Plaintiff constitutional deprivation of the Plaintiff resulting in Injury.
15

16   **280.**        Defendants, Dravis Ruthven, and Smith actions or inaction's demonstrated
17           sufficient causal connections between there wrongful conduct as supervisors and the
18           Constitutional violation of Plaintiff.
19

20   **281.**        Defendants,SRCI and ODOC at all times relevant was a municipality.
21

22

23

24

*Prisoner Civil Right Complaint*            Form 17.030
                                *42 U.S.C 1983*

1    **282.**    Plaintiffs injury involve SRCI, and ODOC enforcing a Municipal Policy, Practice

2    and custom of Deliberate Indifference promulgated by its body of officers, in violation of

3    the Eighth and Fourteenth Amendment of the United States Constitution and Eighth

4    Amendment Prohibition of Cruel and Unusual Punishment.

5

6    **283.**    Defendants, Dravis, Ruthven, and Smith at all time relevant were all state actors.

7

8    **284.**    Plaintiff injury involve the deprivation of the Eighth Amendment for Supervisory

9    Liability for Deliberate Indifference, by there response and knowledge of offensive

10    practices of there subordinates, and by the affirmative causal link between the supervisor

11    inaction and the Eighth  Amendment Constitutional Injury suffered by the Plaintiff.

12

13

14

15

16

17

18

19

20

21

22

23

24

1           **SECOND CLAIMS FOR RELIEF**

2                    **Claim 5-6**

3   **285.**        Defendants, Gulick is individually liable for Eighth Amendment Deliberate

4   Indifference by failing to provide a reasonable request for medical treatment and such

5   failure exposes the Plaintiff to undue suffering or threat of tangible physical injury.

6

7   **286.**        Defendant, Gulick is individually liable for Eighth Amendment Deliberate

8   Indifference by intentionally refusing to provide Plaintiff medical care for Degenerative

9   Disc Disease, and worsening condition of back and spinal pain and lumbar swelling.

10  Neglecting to treat Plaintiff condition for a period of 4-years or since 2015.

11

12  **287.**        Defendant, Gulick is individually liable for Eighth  Amendment Deliberate

13  Indifference by delaying necessary medical care for non-medical reason, and erecting

14  arbitrary and burdensome ineffective medical examinations resulting in interminable

15  delays and out right denials of medical care to plaintiff suffering for a period of 4-years or

16  since 2015.

17

18  **288.**        Defendant, Gulick at all times relevant was a state actor.

19

20

21

22

23

24

1    **289.**    Plaintiff injury by Gulick involved the deprivation of the Eighth Amendment

2    Deliberate Indifference, applicable to the state by the Fourteenth Amendment of the

3    United States Constitution, and the Eighth Amendment Prohibition of Cruel and Unusual

4    Punishment.

5

6    **290.**    Defendants, Gulick, Hemphill, Koltes, Clements, and Digiulio are individually

7    liable for denial of Plaintiff State granted access right that permits Plaintiff to obtain care

8    from non Prison medical Professional of his choice, so long as he himself and not the

9    institution bears the cost.

10

11    **291.**    Defendants, Gulick, Hemphill, Koltes, Clements, and Digiulio are individually

12    liable for denial of Plaintiff State granted liberty or Property rights of prisoners entitled to

13    protection under the Due Process Cause against arbitrary state abrogation.

14

15    **292.**    Defendants,Gulick Hemphill,Koltes, Clements, and Digiulio are individually

16    liable for improper denial of Plaintiffs State granted liberty or Property rights to Access to

17    Medical Care premised on the Due Process Clause of the Fourteenth Amendment of the

18    United States  Constitution.

19

20    **293.**    Defendants, Gulick Hemphill,Koltes,Clements,and Digiulio at all times releavt

21    were all state actors.

22

23

24

294.     Plaintiff injury involved the deprivation of the Due Process Clause of the

Fourteenth Amendment to the Untied State Constitution, and the Eight Amendment

Prohibition of Cruel and Unusual Punishment.


**ISSUE OF  FIRST INJUNCTIOINS**

**Claim 1-4**

295.     Order Defendants, Dravis, Ruthven, and Smith to:

Immediately arrange for Plaintiff to be provided an updated Comprehensive Mental

Health Examination by a Outside Qualified License Psychiatrist, and order that such

examination is conducted at SRCI, were the Plaintiff resides.


296.     And Obtain from the license Psychiatrist an evaluation of Plaintiff Mental Health

Psychosis,and prescription for a course of Mental Health Treatment consistent with

Ameliorative Care.


297.     Issue a Permanent Injunction, ordering Defendants, Dravis,Ruthven, and Smith,

prohibiting Dr. Ann Clark, Dr, Trudy Evans, and D,Jennings from Future retaliatory

actions regarding any participation in the development of Plaintiff Mental Health Care.


298.     Issue a Permanent Injunction requiring SRCI,ODOC, or there agents to implement

a written policy providing Ameliorative Mental Health Care to Prisoners Diagnose with a

mental condition.

1   299.     Issue a permanent Injunction, requiring defendants, SRCI,ODOC or there agents

2         to implement staff training to conduct adequate Mental Health Assessment consistent

3         with identifying a deprivation in a prisoners Ameliorative Mental Health Care and to

4         revise there definition and policy on Mental Health Assessment.

5

6                         **ISSUE OF SECOND INJUNCTIOINS**

7                                 **Claim 5-6**

8   300.     Issue an Injunction Ordering Defendants, Gulick, Hemphill, Koltes, and Digiulio

9         or there agents to:

10        Immediately arrange for Plaintiff to be examined by a Orthopedic Specialist, and obtain

11        from that Specialist an evaluation of the conditions of Plaintiff lumbar, and prescription

12        for a course of medical treatment that will restore and maintain the full function of

13        Plaintiff spine, and alleviate acute suffering.

14

15  301.     Immediately  arrange for Plaintiffs need for a Pain Specialist, or other follow up

16        medical treatment to be evaluated by a medical Practitioner with expertise in the

17        Treatment of Degenerative Disc Disease.

18

19  302.     Issue a Permanent Injunction requiring Defendants, Gulick, Hemphill,Koltes,

20        Digiulio, or there agents to carry out without delay the treatment directed by a Outside

21        Specialist or expert Practitioner.

22

23

24

**FIRST AWARD FOR DAMAGES**

**Claim 1-4**

**303.**      $50.000 jointly and severely  against defendants,SRCI,ODOC, for the Physical and emotional suffering sustained as a result from failure to provide Plaintiff Ameliorative Mental Heath Care, resulting in Plaintiffs physical and Constitutional Injury.

**304.**      $10.000, jointly and severely against defendants, Dravis Ruthven, and Smith for Failure to supervise or control there subordinates which resulted in Physical and Constitutional Injury.

**SECOND AWARD FOR DAMAGES**

**Claim 5-6**

**305.**      $10.000 jointly severely against Gulick, Hemphill, Koltes  Clements,and Digiulio for failure to Provide Plaintiff Access to Outside Medical Care, which resulted in Physical and Constitutional Injury.

**306.**      $100.000, against Gulick, for failure to provide Plaintiff medical treatment for Degenerative Disc Disease, resulting in a worsening back and spinal condition, and delaying medical care for 4-years or since 2015, despite Plaintiff repeated  written request for medical care,  and for Plaintiff permanent impairment of Lumbar complications and Migraine Headaches, physical and Constitutional Injury.

1          **THIRD AWARD FOR DAMAGES**

2                    **Claim 1-6**

3    **307.**      $100.000 Jointly against all Defendants: SRCI, ODOC, Dravis, Ruthven,

4          Smith,Gulick, Hemphill, Koltes,Clements,and Digiulio,  for non economic damages.

5

6

7                    **ATTACHMENTS**

8    **308.**      Plaintiffs Exhibits Cover

9    **309.**      Plaintiffs Exhibits No. 1 thru  48

10   **310.**      Appellate Judgment/ Dismissal State Habeas Petition

11   **311.**      Order of Dismissal Without Prejudice/ State  Habeas Petition

12   **312.**      Order Granting Motion to Waive Filing Fee/ Denying State Habeas Petition

13

14          Date this 16th   , day of December, 2019

15

16

17

18          Respectfully Submitted,

19          _____  Date: 12/16/2019 Time: 1:28  am☐    pm☑

20   cc:          (Signature) *Pro Se Plaintiff*
                  Ernest L Dean #20539092

21                Snake River Correctional Institution
                  777 Stanton Blvd
                  Ontario, Oregon  97914

22

23

24

1

2                             **Verification of Complaint**

3

4        **STATE OF OREGON,**            )
                                          )   **SS. VERIFICATION**
5        **COUNTY OF MALHEUR**           )

6

         I Ernest Lee Dean, of Lawful age, being first duly sworn upon oath state:
7

8        **1**. That I am the plaintiff in this lawsuit.
         **2.** That I have read the complaint and am familiar with its contents.
9        **3.** That the Statements and Facts contained in the complaint are true and correct to the
            best of my knowledge and belief.

10

11                                                    _____

12                                                        ( Signature of Plaintiff )

13

         Signed  and sworn to (or affirmed)  before me;
14

15          on _December 17th__ 20 _19_ by _Ernest Dean_

16          _Janell Sue Rochester_
17          Notary Public-State of Oregon

                                              OFFICIAL SEAL
                                          JANELL SUE ROCHESTER
18                                          NOTARY PUBLIC - OREGON
                                            COMMISSION NO. 959941
            My commission expires: _03/20/2021_   MY COMMISSION EXPIRES MARCH 20, 2021
19

20

21

22

23

24

1

## NOTICE OF FILING AND PROOF OF SERVICE

2

I certify that I Ernest L. Dean, directed the original 42 USC 1983 Complaint to be filed with the  Office of the Clerk of the , United states  District Court Of Oregon , 10000 SW Thrid Avenue Suit 740 Portland OR. 97204

3

Pursuant to Fed.Rule.Civ. Proc. Rule 5.4 d, Plaintiff **Consents to Electronic Service,** as a Filing User constitutes consent to Electronic Service of all documents as provided in this General Order and in accordance with the Federal

4

Rules of Civil Procedures

5

**OFFICE OF  THE CLERK**
**UNITED STATES DISTRICT COURT**
**1000 SW Third Avenue Suit 740**

6

**Portland, OR 97204**

7

By the following method of filing:

**INDICATE METHOD OF FILING**

8

☑    Electronic eService

9

❑  United States Postal Service, certified or registered mail, return receipt requested

❑  Hand delivery.

10

❑  Other (specify):

11

_____

## CERTIFICATE OF SERVICE

12

I further certify that   , upon receipt of the confirmation email stating that the document, has been accepted by the

13

efilling system, this: **Original, 42 1983 Civil Complaint**   will be  served on the upon the Adverse Party, or Defendants  Attorney, in compliance with  electronic efilers, Policies and Procedures.

14

15

by the following method of service:
☑  Electronic eService

16

❑  United State Postal Service, certified or registered mail, return receipt requested.

17

❑  Hand delivery.

❑    No Copy Served, Until Compliant has been assigned a Civil Case Number.

18

❑  Other (specify): Party has not been served, pending a case number for this case.

19

20

Respectfully Submitted,

21

_____ Date: 12/16/2019 Time: 1:28  am❑    pm☑

cc:          (Signature) *Pro Se Plaintiff*
Ernest L Dean #20539092

22

Snake River Correctional Institute
777 Stanton Blvd

23

Ontario, Oregon  97914

24