IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


EARNEST LEE DEAN,                                    Case No. 2:19-cv-02050-JR

                    Plaintiff,                       OPINION AND ORDER

        v.

DRAVIS, RUTHVEN, SMITH,
GULICK, HEMPHILL, KOLTES,
CLEMENTS, DIGIULIO, CAIN,
and PETERS,

                    Defendants.
_____

RUSSO, Magistrate Judge:

        Pro se plaintiff Ernest Lee Dean filed this action under 42 U.S.C § 1983 against

defendants Dravis, Ruthven, Smith, Gulick, Hemphill, Koltes, Clements, and Digiulio, medical

providers with the Oregon Department of Corrections ("ODOC").[1] Defendants now move for

summary judgment pursuant to Fed. R. Civ. P. 56. All parties have consented to allow a

Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P.

73 and 28 U.S.C. § 636(c). For the reasons set forth below, defendants' motion is granted, and

this case is dismissed.

_____

[1] As addressed in greater detail below, defendants Cain and Peters were previously dismissed
from this action.

# BACKGROUND

At all relevant times, plaintiff was an inmate at Snake River Correctional Institution. On November 11, 2014, plaintiff reported a "pinched nerve in [his] back" and received a low bunk order for seven days. Gulick Decl. ¶ 5 (doc. 49); Gulick Decl. Ex. 1, at 34 (doc. 49).[2]

On November 20, 2014, plaintiff saw a nurse and requested low bunk orders due to his ongoing back pain. Gulick Decl. ¶ 6 (doc. 49); Gulick Decl. Ex. 1, at 30 (doc. 49). The nurse discussed the matter with Dr. Snider, who declined the request. Id.

On November 25, 2014, plaintiff presented to health services to obtain a low bunk order. Gulick Decl. ¶ 7 (doc. 49); Gulick Decl. Ex. 1, at 30 (doc. 49). He remarked that he had to sleep on the floor due to an old back injury but was observed to ambulate without any problems and with a steady gait. Id. Plaintiff was instructed to obtain a follow-up appointment. Id.

The next day plaintiff again requested a low bunk order. Gulick Decl. ¶ 8 (doc. 49); Gulick Decl. Ex. 1, at 30 (doc. 49). The provider informed plaintiff that the doctor wanted to give the recommended medications "a chance to work before ordering [a] low bunk"; plaintiff got angry and left. Gulick Decl. ¶ 8 (doc. 49); Gulick Decl. Ex. 1, at 30-31 (doc. 49). However, plaintiff returned and apologized for his behavior, and was provided with a low bunk order for one week until he secured follow-up care. Gulick Decl. Ex. 1, at 31 (doc. 49).

On December 1, 2014, plaintiff presented for follow-up care, indicating he had sciatica for two years and occasionally took Norco, a narcotic, for pain relief. Gulick Decl. ¶ 9 (doc. 49); Gulick Decl. Ex. 1, at 31 (doc. 49). He sought a low bunk order and stronger pain medication. Id. Plaintiff's examination revealed that he was fit and muscular, with a normal gait when distracted,

---

[2] The record before the Court reflects plaintiff's broader medical history/treatment for other unrelated impairments. Only the evidence relevant to plaintiff's remaining claim is recounted herein.

and a slow and shuffling gait when he was aware, he was being observed. Id. He had normal posture but exhibited an extreme pain response to a light skin touch. Id. The provider noted plaintiff's back pain symptoms were "clouded by overreaction." Id. Plaintiff refused the provider's recommendations to stretch, participate in a back program, and for nonsteroidal anti-inflammatory drugs. Id. The provider found "no evidence of necessity" for a low bunk order. Id.

On December 19, 2014, plaintiff saw a nurse and complained that he had reinjured his back by "slip[ping] off the steps of the bus." Gulick Decl. ¶ 10 (doc. 49); Gulick Decl. Ex. 1, at 32-33 (doc. 49). Plaintiff recounted that he initially injured his back at work four years ago and was on Norco and supposed to have back surgery but declined due to the recovery time. Id. During the examination, plaintiff was able to bend at the waist and touch his knees with pain. Id. He had slight tightness in his right lower back, but with no visible swelling or redness, and no costovertebral angle tenderness on palpitation/tapping. Id. Plaintiff ambulated slowly with small steps but declined low bunk orders and light work duty. Id. The nurse took a urine sample and ordered a lumbar spine x-ray. Id. The nurse instructed plaintiff to take no more than "2 Naproxen in a 24-hour period," and gave him a handout on managing back pain and stretches. Id.

Plaintiff returned to the health station later that day, stating that he had "hurt my back more" by "throwing my stuff down the stairs" and requesting a low bunk order. Gulick Decl. ¶ 11 (doc. 49); Gulick Decl. Ex. 1, at 33 (doc. 49). Upon examination, the nurse observed no muscle spasms and a slow gait, but with no obvious deformity. Id. She furnished a two-week low bunk order. Id.

On December 22, 2014, plaintiff underwent a lumbar spine x-ray. Gulick Decl. ¶ 12 (doc. 49); Gulick Decl. Ex. 1, at 54 (doc. 49). Dr. Yeager, the reviewing doctor, observed a

"considerable amount of colonic stool, suggesting constipation," but opined that plaintiff's imaging was otherwise negative. Id.

On December 31, 2014, plaintiff requested medical treatment for his back due to an old work injury. Gulick Decl. ¶ 13 (doc. 49). He stated that nonsteroidal anti-inflammatory drugs and Neurontin, an anti-convulsant and nerve pain medication with sedative properties (also known as Gabapentin), were no longer providing pain relief. Id. at ¶¶ 13-14, 30. Plaintiff was observed to have no issues ambulating, touching his feet, or tying his shoes. Id.

On January 5, 2015, Gulick, the Corrections Physician Specialist at Snake River Correctional Institute, reviewed plaintiff's medical chart and found no basis for restrictions or renewing the Neurontin prescription. Id. at ¶¶ 1, 15; Gulick Decl. Ex. 1, at 29 (doc. 49); Dean Decl. ¶ 2 (doc. 55).

On January 10, 2015, plaintiff obtained medical care for his back and requested prescription pain medication. Gulick Decl. ¶ 16 (doc. 49). Upon examination, plaintiff appeared fit and muscular, with no apparent issues sitting, standing, or walking. Id. Plaintiff nonetheless requested follow-up treatment with Gulick to obtain a prescription for pain medication. Id.

On February 4, 2015, Gulick saw plaintiff, who complained of lower back/hip back pain. Id. at ¶ 17; Gulick Decl. Ex. 1, at 28 (doc. 49). Gulick explained he would check plaintiff's x-rays and labs, and follow-up regarding potential degenerative joint disease. Id.

On February 9, 2015, plaintiff received an x-ray of his sacroiliac joints. Gulick Decl. ¶ 18 (doc. 49); Gulick Decl. Ex. 1, at 28, 52 (doc. 49). "No inflammatory or remarkable osteoarthritic changes" were apparent. Id.

On March 2, 2015, Gulick treated plaintiff for right hip pain associated with an August 2013 motor vehicle accident. Gulick Decl. ¶ 19 (doc. 49); Gulick Decl. Ex. 1, at 27 (doc. 49).

Gulick diagnosed plaintiff with sacroiliac joint degenerative disc disease after trauma based on his reported symptoms and wrote plaintiff a low bunk order. Id.

On April 15, 2015, Gulick saw plaintiff for complaints of muscle spasms, neck spasms, and pain in his spine upon turning. Gulick Decl. ¶ 20 (doc. 49); Gulick Decl. Ex. 1, at 26 (doc. 49). Plaintiff explained that his pain increased following the discontinuation of his prescription for Elavil, an anti-depressant and nerve pain medication. Id. Upon examination, Gulick observed a slightly decreased range of motion in plaintiff's neck, but his Spurling's test was negative, and he sat, stood, and walked normally. Id. The doctor re-prescribed Elavil. Id.

On April 21, 2015, plaintiff obtained cervical spine x-rays. Gulick Decl. ¶ 21 (doc. 49); Gulick Decl. Ex. 1, at 50 (doc. 49). Imaging was normal except for modest loss of disc height at multiple levels, which "may reflect underlying disc disease," and "mild to moderate foraminal narrowing at C4-5." Id.

On May 26, 2015, plaintiff presented to the health station. Gulick Decl. ¶ 22 (doc. 49); Gulick Decl. Ex. 1, at 25 (doc. 49). The nurse noted that plaintiff walked without difficulty but was upset his Neurontin prescription had been discontinued. Id.

On July 21, 2015, Gulick examined plaintiff. Gulick Decl. ¶¶ 22-23 (doc. 49); Gulick Decl. Ex. 1, at 24 (doc. 49). Plaintiff reported pain in his right hamstring and calf, inner foot, big toe, and low spine, and requested Neurontin. Id. Gulick noted that plaintiff sat, stood, and walked normally, and had full strength in his lower extremities. Id. The doctor prescribed Pamelor, an anti-depressant and nerve pain medication. Id.

On August 13, 2015, plaintiff presented for care at the health station, reporting severe back pain and requesting a prescription for Neurontin. Gulick Decl. ¶ 24 (doc. 49).

On September 15, 2015, Gulick saw plaintiff for a follow-up appointment. Id. at ¶ 25; Gulick Decl. Ex. 1, at 23 (doc. 49). Plaintiff reported pain in both sacroiliac joints and his right flank, as well as tingling in all of his right toes up to his knees. Id. Upon examination, plaintiff sat, stood, and walked normally, with "nothing palpable in his back." Id. Gulick found plaintiff's symptoms unremarkable, with the exception that the toe paresthesia was a new complaint and "odd." Id.

On September 20, 2015, plaintiff was taken to Saint Alphonsus Hospital in Ontario, Oregon, for an intentional overdose of prescription medication. Gulick Decl. ¶ 26 (doc. 49); Gulick Decl. Ex. 1, at 40-46 (doc. 49).

On September 30, 2015, plaintiff complained of low and mid back pain. Gulick Decl. ¶ 27 (doc. 49); Gulick Decl. Ex. 1, at 22 (doc. 49). The nurse scheduled an appointment with Gulick. Id.

On October 14, 2015, plaintiff refused to see Gulick at his scheduled appointment. Gulick Decl. ¶ 28 (doc. 49); Gulick Decl. Ex. 1, at 22 (doc. 49).

Approximately six months later, plaintiff sought medical care for severe pain in his abdomen, back, and neck. Gulick Decl. ¶ 29 (doc. 49); Gulick Decl. Ex. 1, at 21 (doc. 49). He reported "continuing chronic all over pain" and a good response to Neurontin, which was previously prescribed. Id. The nurse noted that plaintiff walked into the clinic without effort and referred him to Gulick. Id.

Gulick saw plaintiff on April 21, 2016. Gulick Decl. ¶ 30 (doc. 49); Gulick Decl. Ex. 1, at 21 (doc. 49). When Gulick declined to prescribe Neurontin, plaintiff left suddenly. Id. Gulick observed that plaintiff moved easily entering and exiting the office, without any clear muscle spasms or change in functioning. Id.

On May 11, 2016, the ODOC, via Nurse Bradford, responded to plaintiff's Grievance regarding his medical care as follows:

> You are asking for proper medical treatment, a new provider, and to renew your pain medication, specifically, gabapentin. Dr. Gulick is your assigned provider, based on your SID number, and that cannot be changed. You just saw him on April 21, 2016, where he evaluated your chronic back and abdominal pain. He discussed pain med options with you, but you are only interested in gabapentin. There are many other medications to try before resorting to gabapentin, so our providers don't start with gabapentin. You also have a major history of misuse of your prescribed medications, so this is something that has to be considered in the big picture of your medical plan of care. Also, with chronic pain, it is a long-term issue that may never totally go away, so it is very important to consider your providers suggestions and try them all. A combination of several things can contribute to you feeling better overall, even when your chronic pain cannot be totally alleviated. Other things would include exercise, meditation, etc. Health Services is committed to providing care that is respectful, compassionate, objective and non-judgmental. Please continue to work with the healthcare staff regarding your medical needs.

Aggrey Decl. Ex. 2, at 1 (doc. 50). Plaintiff's Grievance Appeal was denied. Id. at 2.

On November 9, 2016, plaintiff returned to Gulick, complaining of low back pain and the medical staff's refusal to provide him with narcotics. Gulick Decl. ¶ 31 (doc. 49); Gulick Decl. Ex. 1, at 20 (doc. 49). Gulick observed plaintiff to walk, sit, and stand "effortlessly." Id. He nonetheless reviewed the ODOC and national rules on chronic narcotics but found that plaintiff "was not close to qualifying." Id. Upon notification of this fact, plaintiff left the health clinic. Id.

On February 22, 2017, Koltes, a medical doctor, examined plaintiff to provide a second opinion on his chronic pain. Gulick Decl. ¶ 32 (doc. 49); Gulick Decl. Ex. 1, at 17, 19 (doc. 49). Plaintiff reported severe muscle spasms and anterior abdominal pain with back pain. Id. Koltes noted that plaintiff's abdominal was rotund and soft, but that plaintiff experienced difficulty relaxing it. Id. Plaintiff did not exhibit spinal tenderness or problems getting on the examination table, and he could perform a straight leg raise with both legs. Id. He had symmetric, intact bilateral lower extremity strength but with hesitation and cogwheeling. Id. Koltes resolved that

plaintiff's complaints of chronic back pain and spasms were non-conventional and denoted nothing remarkable beyond poor flexibility. Id. The doctor therefore recommended lab work and examination related to plaintiff's prostate and bladder, explaining that cancer could be the cause of plaintiff's symptoms. Id. Plaintiff refused Koltes' recommendations and instead requested that the Therapeutic Level of Care Committee ("Committee") approve a prescription of Neurontin 80mg three times per day. Id. Koltes discussed other pain medication options with plaintiff. Id.

On March 1, 2017, the Committee denied plaintiff's request for Neurontin. Gulick Decl. ¶ 33 (doc. 49); Gulick Decl. Ex. 1, at 17 (doc. 49).

On September 12, 2017, plaintiff sought treatment for multiple issues, including back pain spanning back two years. Gulick Decl. ¶ 35 (doc. 49); Gulick Decl. Ex. 1, at 14 (doc. 49). When the provider offered to schedule an appointment with Gulick, plaintiff stated, "I will not see him – I'm suing him." Id.

On May 28, 2018, plaintiff messaged the Medical Services Manager, stating he was "in a lot of pain" and requesting pain medicine and to see an outside back specialist. Gulick Decl. ¶ 36 (doc. 49); Gulick Decl. Ex. 1, at 49 (doc. 49). Because plaintiff had not seen a doctor for back pain in more than one year, the ODOC referred plaintiff to Gulick. Id.

Gulick saw plaintiff on June 11, 2018. Gulick Decl. ¶ 37 (doc. 49); Gulick Decl. Ex. 1, at 13 (doc. 49). For the first time, plaintiff requested surgery for his low back pain and to see a specialist. Id. There was nothing remarkable upon examination and the Committee (in consultation with Gulick, Hemphill, Digiulio, and Clements) did not approve plaintiff's request. Gulick Decl. ¶¶ 37-38 (doc. 49); Gulick Decl. Ex. 1, at 13, 39 (doc. 49).

On March 18, 2019, plaintiff messaged the Medical Services Manager, once again requesting referral to an outside back specialist. Gulick Decl. ¶ 39 (doc. 49); Gulick Decl. Ex. 1, at 48 (doc. 49). The ODOC scheduled a chart review. Id.

Two months later, plaintiff messaged the Medical Services Manager because he was suffering from chronic back pain that was worsening. Gulick Decl. ¶ 40 (doc. 49); Gulick Decl. Ex. 1, at 47 (doc. 49). The ODOC scheduled an appointment for him to see a provider. Id.

On May 21, 2019, plaintiff was examined at Snake River Correctional Institution. Gulick Decl. ¶ 41 (doc. 49); Gulick Decl. Ex. 1, at 12 (doc. 49). He complained of neck pain that radiated into his left arm, jaw, and mid-back. Id. The provider documented an unremarkable exam and scheduled a chart review and follow-up appointment. Id.

On September 11, 2019, plaintiff saw a provider for chronic back pain existing for the past four years and intense lumbar pain due to swelling over the past two weeks and requested to see a specialist. Gulick Decl. ¶ 42 (doc. 49); Gulick Decl. Ex. 1, at 11 (doc. 49). Upon examination, the provider could see and palpitate "4-5cm" of swelling in the lower left back. Id. The provider scheduled plaintiff for a follow-up appointment. Id.

On September 30, 2019, Gulick treated plaintiff. Gulick Decl. ¶ 43 (doc. 49). The doctor noted "a slight nodular area in the low paraspinal left area," but plaintiff's exam was otherwise unremarkable. Id. Plaintiff insisted he needed surgery, so Gulick went over the imaging studies with him. Id. Plaintiff was angry that the source of his pain could not be found. Id.

On October 6, 2019, plaintiff saw a provider because his bottom bunk restriction expired. Gulick Decl. ¶ 44 (doc. 49); Gulick Decl. Ex. 1, at 10 (doc. 49). He reported pain and swelling in his lower back over the past two weeks that was getting worse. Id. The provider observed

swollen soft tissue in the lumbar region, but no redness, and that plaintiff sat stiffly in his chair. Id. Plaintiff requested a second opinion. Id.

The Committee (in consultation with Gulick, Hemphill, Koltes, and Dr. Roberts) reviewed plaintiff's request for additional imaging studies and a second opinion related to his back pain and approved another examination with Koltes. Gulick Decl. ¶ 45 (doc. 49); Gulick Decl. Ex. 1, at 9, 38 (doc. 49).

Koltes saw plaintiff on November 1, 2019. Gulick Decl. ¶ 46 (doc. 49); Gulick Decl. Ex. 1, at 8-9 (doc. 49). Plaintiff reported acute daily back pain and swelling and requested to see an outside urologist and infection disease specialist. Id. Plaintiff refused to participate in the examination or allow Koltes to passively observe him or conduct a prostate exam, repeatedly remarking that "he just wanted what he wants." Id. He also refused to have an x-ray taken of his spine. Id. Koltes recommended a complete examination and labs; plaintiff agreed that he might allow the labs but not the x-rays. Id.

On November 6, 2019, the Committee denied plaintiff's request for a consultation in Idaho but approved Koltes' plan for additional labs and x-rays. Gulick Decl. ¶ 47 (doc. 49); Gulick Decl. Ex. 1, at 7 (doc. 49).

On November 21, 2019, plaintiff sought treatment for the lump on his back but refused to see a doctor or obtain an assessment beyond an examination of the lump through his shirt. Gulick Decl. ¶ 48 (doc. 49); Gulick Decl. Ex. 1, at 6 (doc. 49).

On December 18, 2019, plaintiff commenced this action.

On January 21, 2020, plaintiff messaged health services concerning headaches and neck pain upon waking, and "requesting a prescription to manage the pain." Dean Decl. Ex. 49 (doc. 55). He was scheduled to see Gulick. Id.

On January 29, 2020, plaintiff reiterated his complaints and requested prescription pain medication because nonsteroidal anti-inflammatory drugs were ineffective. Dean Decl. Exs. 50-51 (doc. 55). He was once again referred to Gulick. Id.

On January 30, 2020, plaintiff presented at health services complaining of worsening migraines and very intense pain in his lower back and requested an MRI or CT scan. Gulick Decl. ¶ 49 (doc. 49); Gulick Decl. Ex. 1, at 5 (doc. 49). Plaintiff was offered a warm compress and gentle stretching and told to report symptoms if they worsened before his scheduled appointment with Gulick. Id.

On February 3, 2020, Gulick saw plaintiff and ordered spinal imaging, which was performed four days later. Gulick Decl. ¶¶ 50-51 (doc. 49); Gulick Decl. Ex. 1, at 2, 35-36 (doc. 49). Plaintiff sent a complaint message related to Gulick's refusal to prescribe pain medication. Dean Decl. Ex. 52 (doc. 55). The imaging was unremarkable except for mild/minimal degenerative disc height loss and anterior osteophytes in the lumbar and cervical spine, similar to plaintiff's 2014 findings. Gulick Decl. Ex. 1, at 35-36 (doc. 49).

On February 13, 2020, plaintiff messaged Digiulio regarding lumbar pain, frequent neck pain, shoulder pain and numbness, and migraines. Gulick Decl. ¶ 52 (doc. 49); Gulick Decl. Ex. 1, at 4 (doc. 49). Upon being greeted by a nurse instead of the doctor, plaintiff left the appointment prematurely, stating "I didn't ask for you [and] I don't want to discuss the reasons why I don't want to take antidepressants for pain." Id. The nurse observed that plaintiff had a prescription for Imitrex to treat his migraines and was able to ambulate and sit without difficulty. Id.

On February 20, 2020, plaintiff returned to Gulick to request specialty care and intervention for his unchanged back pain. Gulick Decl. ¶ 53 (doc. 49); Gulick Decl. Ex. 1, at 3

(doc. 49). The doctor observed plaintiff to move "easily" into and out of the examination room. Id. He explained there was no change from plaintiff's 2014 x-rays, which showed mild degenerative disc disease, and that medication was the only option without the necessary surgical signs. Id. Plaintiff got upset and left the appointment. Id.

On March 31, 2020, plaintiff saw a nurse and reported that, while he was lifting his tote and bags, he felt a "pop" in his low back associated with pain and swelling. Gulick Decl. ¶ 54 (doc. 49); Gulick Decl. Ex. 1, at 2 (doc. 49). Although plaintiff walked slowly, his exam was normal; Gulick was called in to evaluate plaintiff. Gulick Decl. ¶ 55 (doc. 49); Gulick Decl. Ex. 1, at 2 (doc. 49). When Gulick vocalized that there was no basis to provide plaintiff with low bunk orders given his normal findings, plaintiff "quickly stood and left effortlessly after entering the room bent over." Id.

Over the next three days, plaintiff messaged health services complaining of severe back pain and requesting light duty, an MRI, and referral to an outside specialist. Dean Decl. Exs. 53-55 (doc. 55). He was scheduled for follow-up care. Id.

On April 20, 2020, plaintiff filed his First Amended Complaint, alleging: supervisory liability against Dravis, Ruthven, and Smith under 42 U.S.C. § 1983 relating to his mental health treatment (Claims 1-3); deprivation of his Eighth Amendment rights against Peters and Gulick based on based Gulick's "discontinuation of all pain medication" and lack of treatment for his degenerative disc disease from February 15, 2015, through 2019 (Claim 4); and deprivation of his Due Process rights against Cain, Gulick, Digiulio, Hemphill, Clements, and Koltes based on the Committee's failure to refer him to an MRI/CT and outside pain specialist (Claim 5). See generally Am. Compl. (doc. 24). The Court subsequently granted defendants' motion to dismiss Claims 1-3 and 5, as well as Cain and Peters as defendants, leaving only plaintiff's fourth claim

against Gulick for violation of his Eighth Amendment rights. Opinion & Order 2-5 (Aug. 18, 2020) (doc. 34).

Approximately six months thereafter, plaintiff returned to Gulick complaining of increased headaches, neck pain, and back pain, and increased numbness in his upper left extremity. Gulick Decl. ¶ 56 (doc. 49); Gulick Decl. Ex. 1, at 1 (doc. 49); Dean Decl. Exs. 56-59 (doc. 55). Following a normal exam, Gulick indicated he would ask the Committee to consider Topamax, an anti-convulsant used to treat nerve pain and migraines. Gulick Decl. ¶ 56 (doc. 49); Gulick Decl. Ex. 1, at 1 (doc. 49). Plaintiff refused this medication. Dean Decl. ¶¶ 71-72 (doc. 55).

On October 21, 2020, the Committee (in consultation with Gulick, Hemphill, Dr. Roberts, and Pharmacist Drolinzer) determined that an MRI and narcotic pain medications were not medically indicated. Gulick Decl. ¶ 57 (doc. 49); Gulick Decl. Ex. 1, at 1, 37 (doc. 49).

Two days later, plaintiff messaged health services to grieve Gulick's "inadequate medical care." Dean Decl. Ex. 60 (doc. 55). Plaintiff was informed that he could "not grieve the same issue twice" and was offered a meeting with the Health Services Manager. Id. There is no medical or other documentary evidence in record beyond October 2020.

On January 27, 2021, defendants filed the present motion for summary judgment as to plaintiff's sole remaining claim. That same day, the Court provided plaintiff with a "Summary Judgment Advice Notice," explaining this lawsuit's procedural posture and what was expected from plaintiff to survive summary judgment. Briefing was completed regarding that motion on April 27, 2021.[3]

---

[3] On May 17, 2021, plaintiff lodged a "Supplemental Brief," further responding to defendants' motion, and also stating his intention to call at trial an unnamed "former SRCI-Physician who was a sitting TLC-Committee Member" and had anonymously agreed to provide a written lay

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

## DISCUSSION

Defendants argue summary judgment is warranted because plaintiff cannot demonstrate an Eighth Amendment violation and, even so, qualified immunity attaches. Defs.' Mot. Summ. J. 4 (doc. 48). Relying on the same medical records furnished by defendants, plaintiff asserts that

---

statement regarding the beneficial use of MRIs in detecting and diagnosing nerve damage associated with degenerative disc disease. Pl.'s Sur-reply to Mot. Summ. J. 4-5 (doc. 62). Plaintiff has not been granted leave to file a sur-reply in accordance with LR 7-1(e). The Court has nonetheless considered plaintiff's "Supplemental Brief," and the proposed testimony, and finds that neither alters the outcome of this case.

disputed issues of material fact exist because he was diagnosed in April 2015 with degenerative disc disease and denied appropriate treatment, including effective pain medication, additional imaging, and conferral with a specialist. Pl.'s Resp. to Mot. Summ. J. 2-4, 46-50 (doc. 54). Plaintiff also contends that Gulick is not entitled to qualified immunity because he "is not a government official," was "required to provide prisoners with medical care," and plaintiff's February 2020 x-rays showed his condition was progressively worsening. Id. at 21-36.

## I.    Preliminary Issues

Plaintiff's attempts to relitigate his previously dismissed Claim 5 by recasting it under the Eighth Amendment and the continuing violation doctrine, or to interject new allegations regarding events that occurred after the filing of the dispositive complaint, are unavailing. See, e.g., id. at 6-8, 14; Dean Decl. ¶¶ 36-74 (doc. 55).

Concerning the former, "the Ninth Circuit has not adopted the continuing-violation doctrine in the context of Eighth Amendment medical-care claims under § 1983." Deetz v. Ryan, 830 Fed.Appx. 986, 987 (9th Cir. 2020) (citation omitted); see also Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995) (proposed amendments are futile where the plaintiff "presents no new facts but only new theories and provides no satisfactory explanation for his initial failure to fully develop his contentions") (citation omitted).

More importantly, the law of the case doctrine "generally precludes a court from reconsidering an issue decided previously by the same court or by a higher court in the identical case." Hall v. Los Angeles, 697 F.3d 1059, 1067 (9th Cir. 2012). Notably, this Court held that plaintiff's fifth claim was precluded by his inability to pay for outside medical care under Or. Admin. R. 291-124-0085(1). Opinion & Order 5 (Aug. 18, 2020) (doc. 34); see also Herrington v. Bristol, 2019 WL 7598855, *18-19 (D. Or. July 29, 2019), adopted by 2020 WL 265192 (D.

Or. Jan. 17, 2020) (it is not unconstitutional to require an adult in custody to pay for any "medically acceptable but not medically necessary treatment" pursuant to Or. Admin. R. 291-124-0085(1)). Because none of the factors justifying departure from a prior ruling apply here – in fact, plaintiff does not raise this issue in his briefs or provide any argument or evidence related thereto – plaintiff's Claim 5 allegations relating to defendants' purported failure to provide an MRI/CT or referral to a specialist are not presently before the Court.

Regarding the latter, aside from the fact that the operative pleading does not include such allegations, liability cannot be sustained based on medical treatment that occurred between 2015 and 2019 where the event that purportedly renders that treatment inadequate did not take place until late 2020. See Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1080 (9th Cir. 2008) (where "the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); see also Wasco Prods., Inc., v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006) (summary judgment "is not a procedural second chance to flesh out inadequate pleadings") (citation and internal quotations omitted); McClellan v. I-Flow Corp., 2009 WL 3448871, *1 (D. Or. Oct. 22, 2009) (declining to consider the plaintiffs' "claims [on summary judgment] that are not yet pled").

That other inmates may have suffered medical negligence or been denied MRIs by Gulick is insufficient to establish a constitutional violation in regard to plaintiff's own care. Pl.'s Resp. to Mot. Summ. J. 51-52 (doc. 54); Dean Decl. Exs. 62-67 (doc. 55). Likewise, plaintiff's conclusory declaration statements relating to the severity of his back condition or the inadequacy of Gulick's medical care are insufficient to create a triable issue. See, e.g., Dean Decl. ¶¶ 1, 3-4, 17, 20, 24, 75, 83 (doc. 55); see also FTC v. Publ'g Clearinghouse, Inc., 104 F.3d 1168, 1171

(9th Cir. 1997) (conclusory, self-serving statements in a brief or declaration that are unsupported by facts or evidence do not create genuine issues for trial); Bogner v. R & B Sys., Inc., 2011 WL 1832750, *3 (E.D. Wash. May 12, 2011) (court "is not bound by [a declarant's] legal conclusions"; disputed issues of material fact can "not [be] created by simply averring that an act 'was [a legal violation or]' declaring that one's versions of events is 'consistent' with one's theory of the case . . . declarations [must only be considered] for the facts contained therein").

## II.     Analysis of Remaining Claim for Lack of Back Treatment and Pain Medication

To prevail under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) the conduct complained of deprived him or her of an existing federal constitutional or statutory right; and (2) the conduct was committed by a state actor or a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted). There is no dispute that Gulick, as an ODOC employee, qualifies as a state actor for the purposes of § 1983. Gulick Decl. ¶ 1 (doc. 49); Dean Decl. ¶ 2 (doc. 55); see also Am. Compl. ¶ 225 (doc. 24) ("Gulick at all times relevant was a state actor").

Qualified immunity shields government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted). To determine whether a government actor is entitled to qualified immunity, the court evaluates, in no particular order, whether: (1) the alleged misconduct violated a right; and (2) that right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

### A.    Whether Plaintiff's Rights Were Violated

The Eighth Amendment requires prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994). A prisoner claiming an Eighth Amendment violation must establish, both objectively and subjectively, that conditions of confinement are cruel and unusual. Wilson v. Seiter, 501 U.S. 294, 297-98 (1991). To satisfy the objective component, the plaintiff must allege a deprivation that is in relation to a "sufficiently serious" medical need. Id. at 298. "[A] serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Lolli v. Cnty. of Orange, 351 F.3d 410, 419 (9th Cir. 2003) (citations and internal quotations omitted).

To satisfy the subjective component, the plaintiff must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm. Farmer, 511 U.S. at 834. Deliberate indifference in this context means that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference." Id. at 837. Only such indifference can offend "evolving standards of decency" in violation of the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

Here, the record reflects that Gulick, along with other ODOC providers, attempted to find a physical cause for plaintiff's complaints of back and other pain.[4] In addition to myriad physical

---

[4] To the extent Hemphill, Clements, Koltes, and Digiulio are broadly included in Claim 4, plaintiff's allegations are inadequate to impose liability. See, e.g., Am. Compl. ¶¶ 210, 222-31 (doc. 24); see also Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("[b]ecause vicarious liability is inapplicable to [42 U.S.C.] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

examinations, plaintiff received a lumbar spine x-ray in December 2014, a CT scan in January 2015, a sacroiliac joint x-ray in February 2015, cervical spine x-rays in April 2015, and cervical and lumbar spine x-rays in February 2020. Gulick Decl. ¶ 61 (doc. 49); Gulick Decl. Ex. 1, at 35-36, 50-54 (doc. 49).

Contrary to plaintiff's assertion, the most recent imaging from February 2020 does not show a significant worsening of plaintiff's back condition. Rather, similar to the findings obtained in 2014 and 2015, the February 2020 x-rays demonstrate that plaintiff has "[m]ild degenerative disc height loss and uncovertebral arthropathy" in the cervical spine and "minimal multilevel degenerative disc height loss and anterior osteophytes" in the lumbar spine – but otherwise normal spine alignment and vertebral body height, with no prevertebral soft tissue swelling/masses, severe bony foraminal narrowing, or evidence of fracture, dislocation, bone destruction, or other bony abnormalities. Gulick Decl. Ex. 1, at 35-36 (doc. 49). In other words, the objective medical evidence is consistent with Gulick's opinion that plaintiff suffers from mild degenerative disc disease that has been treated in accordance with community standards. Gulick Decl. ¶ 62 (doc. 49).

Although Gulick and other ODOC providers did not prescribe plaintiff Neurontin or narcotic pain medications in response to his many requests, they did provide plaintiff with other forms of pain relief while taking into account his history of medication misuse – i.e., they made available Imitrex and nerve medications similar to Neurontin for plaintiff's back pain and associated symptoms, provided monitoring and treatment in the form of low bunk orders and light duty work when plaintiff's condition became exacerbated, and gave instructions regarding stretching and the use of nonsteroidal anti-inflammatory drugs. See generally Gulick Decl. Ex. 1 (doc. 49); Dean Decl. Exs. 49-60 (doc. 55). ODOC providers also recommended other modalities

to determine a physical cause or to treat plaintiff's complaints of back pain, but he refused some of those recommendations, including diagnostic examinations and medical tests, as well as certain medications. Finally, there is no evidence that Gulick purposefully failed to respond to plaintiff's possible medical needs nor was plaintiff harmed by any alleged indifference. Indeed, as discussed above, while the record before the Court does not contain any documentary evidence after October 2020, the most recent medical records show that plaintiff's back condition remained relatively stable.

Thus, the record before the Court does not evince any further injury, significant or otherwise, or that Gulick knew of and disregarded an excessive risk to plaintiff's health or safety. Stated differently, there is no evidence plaintiff was facing a substantial risk of serious harm between February 2015 and the filing of this lawsuit, or that Gulick or other ODOC providers were deliberately indifferent. While the Court is cognizant of the fact that plaintiff disagrees, and further alleges that Gulick was personally biased against him, the extensive evidence demonstrates regular monitoring, assessment, and treatment for plaintiff's pain complaints.

Significantly, plaintiff does not proffer any contradictory medical evidence in support of his opposition. Plaintiff's own declaration statements and internet articles from Johns Hopkins Medicine, Healthline, and the Mayo Clinic regarding degenerative disc disease, which generally identify MRIs as appropriate diagnostic tests, are insufficient to prove an Eighth Amendment violation given the particular facts of this case. See Herrington, 2019 WL 7598855 at *20-21 (granting summary judgment in favor of the ODOC under analogous circumstances, explaining "mere disagreement with a physician's medical decisions does not establish deliberate indifference as a matter of law" and that the party alleging the Eighth Amendment violation must come forth with evidence showing "Gulick's treatment was medically unacceptable under the

circumstances") (citing Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004)). This is especially true considering that Gulick's course of treatment was fundamentally consistent with the articles proffered by plaintiff, which call for ice/heat, gentle stretching, and nonsteroidal anti-inflammatory drugs prior to the employment of further modalities of treatment or diagnostic tools, and also caution against surgery except in extreme cases. Dean Decl. Ex. 61, at 5-14 (doc. 55).

In essence, plaintiff's allegations sound in medical malpractice – i.e., that Gulick should have utilized certain medications and diagnostic tools instead of others. However, a complaint that a medical provider has been negligent in diagnosing or treating a medical condition is insufficient under the Eighth Amendment. See Estelle, 429 U.S. at 106 ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); see also Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir 2016) ("Eighth Amendment doctrine makes clear that [a] difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference") (citations and internal quotations omitted); Farmer, 511 U.S. at 844-45 (because "a prison official's duty under the Eighth Amendment is to ensure reasonable safety," officials who respond reasonably are not liable) (citation and internal quotations omitted). Defendants' motion is granted.

### B. Whether the Right Was Clearly Established

A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citation and internal quotations omitted). The dispositive inquiry is whether the state actor had "'fair warning' that his conduct deprived his victim of a constitutional right." Id. at 740

(citation omitted); see also Mullenix v. Luna, 577 U.S. 7, 11-12 (2015) ("[w]e do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate").

As addressed herein, defendants did not violate plaintiff's constitutional rights. Nevertheless, even if a disputed issue of material fact existed concerning this issue, defendants would be entitled to qualified immunity. Namely, there is no evidence Gulick altered plaintiff's prescriptions or refused to provide medical care in contravention of ODOC policy, or otherwise that the right to have a particular type of medication or treatment is clearly established in this context. See Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

## CONCLUSION

For the reasons stated herein, defendants' Motion for Summary Judgment (doc. 48) is granted and this case is dismissed.

IT IS SO ORDERED.

DATED this 20th day of May, 2021.


_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge